PAVY, Judge.
This is a workmen’s compensation suit in which the plaintiff, B. J. Lucas, sought a judgment against the defendant, Insurance Company of North America, as insurer of his employer, I. E. Miller & Sons. The trial court awarded plaintiff maximum benefits for total and permanent disability and further held defendant liable for statutory penalties and attorney’s fees finding that the defendant — insurer was arbitrary and capricious in terminating plaintiff’s workmen’s compensation benefits. From this judgment the defendant has appealed. We reverse.
Plaintiff was employed as the operator of an oil field hauling truck and his duties required that he assist in loading and unloading the vehicle. On February IS, 1970, while handling heavy pipe, he sustained a crushing type injury limited to the tips of the middle and ring fingers of his left dominant hand. A few days after the accident either plaintiff quit his employment or his employer discharged him. About two months later he obtained work as the operator of an oil field rigging truck in which employment he had continued steadily until the trial in October, 1974.
There is much argument and evidence in the case regarding the nature and extent of plaintiff’s disability in connection with the extent to which the duties of his employment when injured were different from those of his subsequent employment. We pretermit these issues and base our decision on a lack of causation between the injury and the allegedly disabling conditions.
We base this holding on the following: (1) plaintiff’s injury was limited to the ends of the two fingers of his left hand, (2) his claimed disability consisted of pain and swelling of the whole hand, parts of the arm and vague and erratic complaints pertaining to other parts of the body, (3) none of the many medical experts could confirm any causal relationship between the injury plaintiff experienced and the type of complaints allegedly disabling plaintiff, (4) many of the experts found plaintiff had an extreme psychological overlay, (5) plaintiff’s family doctor found arthritic swelling not only in the two affected fingers but in all fingers of his left hand, the right hand and generally throughout the body, (6) as early as August, 1967, this doctor had noticed bursitis (a form of arthritis) in plaintiff’s knee.
Plaintiff was examined, treated or certified by thirteen physicians. Some of these doctors’ knowledge of the case is completely insignificant and some of the testimony of the others is irrelevant to the present inquiry. We will now discuss the pertinent parts of the doctors’ testimony or reports.
Dr. H. L. Schaheen, general practitioner, initially treated plaintiff. He diagnosed the injury as a hematoma with laceration on end of ring finger and a small hemato-ma on the third finger of the left hand, stitched the laceration and referred plaintiff to his family doctor.
Dr. Louis Shirley, a general practitioner, treated plaintiff on several occasions for about a month after the accident. His report shows he diagnosed plaintiff’s injury as a laceration of the middle and ring fingers of the left hand with a fracture of the left ring finger.
These two doctors had no further contact with plaintiff for he moved to Jena several weeks after the accident and was thereafter treated mostly by Doctors B. E. Doughty and Billy Nesbitt, both general practitioners.
Dr. Doughty saw plaintiff on 11 occasions between the accident date in 1970 and the trial in November, 1974. The first four visits were during the months imme *527 diately following the accident. The first visit was to redress the bandage on Mr. Lucas’ ring finger and the second visit was to obtain a medical authorization from Dr. Doughty to drive a truck for Pelican Truck Lines. Dr. Doughty did not X-ray Lucas’ two fingers but he detected bone fractures in Lucas’ left ring finger. These fractures were fully healed by May 27, 1970. After the May, 1970 visit with Dr. Doughty, plaintiff’s complaints began to change. On July 23, 1970 he told Dr. Doughty he had pain running up his left arm to his shoulder. On August 24, 1970, plaintiff complained of left shoulder pain and swelling in both hands. There was no longer any complaint regarding the two injured fingers. Dr. Doughty examined plaintiff eight times from August, 1970 until the date of trial and heard complaints including left arm pain, right arm pain, neck pain, headaches, pain across chest, back pain, and blurry eyesight.
The only difficulty Dr. Doughty could find with the two fingers was arthritis. During direct examination, Dr. Doughty admitted this arthritis could have traumatic origin. During cross-examination, this testimony was well clarified:
“Q. Okay, Now when you were asked that question a little while ago about whether or not there was traumatic arthritis in his left ring finger and his left middle finger, it was limited only to those two fingers?
Uh-huh. >
Now, is it not true that you’ve also found that this man has an arthritic condition in his other fingers of both hands ? ©
That’s true. >
That is true? ©
Yes. >
And then the arthritic condition in these other fingers would be un- © related to trauma because they haven’t been exposed to trauma, is that correct ?
A. That’s correct.
O. So it may be that the man was even, if the other fingers are suffering from arthritis, then perhaps these two fingers in question were also suffering from arthritis' even before this accident in February of 1970, isn’t that correct?
A. That’s true.
Q. So you certainly can’t say with any certainty that the arthritis in his two fingers on his left hand was necessarily related to trauma if he’s had all these pains in his other fingers?
A. No, you can’t.”
Dr. Doughty also testified as follows:
“Q. Does this man have arthritis anywhere else besides in his right hand and his left hand? Does he have it anywhere else?
A. He’s got it just about everywhere. He’s got it in his knees, his shoulder, his neck, back, hips. At one time or other he’s had pains related to all of it.
O. So he’s just arthritic ridden all over his body is what it boils down to?
A. Well, I can’t quite give that impression. He’s not bed-ridden or anything of that sort, but he does have arthritis. And at one time or another he’s complained of most major joints anyway.
Q. Now, your diagnosis of arthritis both in these two fingers and his unrelated fingers, plus his right hand and these other major joints, is this based on x-ray findings of arthritis on your part, or just a—
*528 A. No, it isn’t.
Q. Is it based on his complaints ?
A. Complaints, yeah.
Q. All right. And is there any other symptom that you based your findings of arthritis on?
A. Are you talking about symptoms and signs or just the symptoms?
Q. I’m sorry. I couldn’t understand you?
A. Symptoms and signs or just the symptoms ?
Q. Symptoms and signs I suppose, sir.
A. Well, he’d be swelling, too.
Q. All right. Anywhere else besides these two fingers on his left hand?
A. Yeah. He’s had swelling at times • in both hands and I know he’s complained of pain and swelling in his hips and knees and shoulders at times.
Q. Okay. So his compaints of swelling are not restricted to just these two fingers of his left hand, are they ?
A. That’s correct.
Q. Is it fair to say that the symptoms of arthritis you found in this man’s left ring finger and left middle finger are the same signs and symptoms you found of arthritis in the unrelated — in the fingers unrelated to trauma ? The hand and the other major joints unrelated to trauma ?
A. Are the symptoms the same ? Yeah, the symptoms are the same.
Q. That is, swelling and complaints of pain?
A. Yes.
Q. Had you ever examined this man prior to 1970?
A. Yes, I had.
Q. For what purpose?
A. I saw him on August 31, 1967. He was having bursitis in his left knee, which is a form of arthritis.”
Dr. Nesbitt is a general practitioner who treated and examined plaintiff initially on October 1, 1970 for complaints of swelling of the fingers of his left hand. X-rays taken of Mr. Lucas’ left hand and fingers disclosed no existing fractures but did show degenerative changes in all fingers. Due to plaintiff’s complaints, Dr. Nesbitt referred him to Dr. Lowrey, an orthopae-dic surgeon, for examination. Dr. Lowrey advised Dr. Nesbitt that plaintiff’s finger stiffness should cause no more than a 10-15% impairment to the left hand and that he was able to return to his former employment. On December 22, 1970, plaintiff again consulted Dr. Nesbitt. He com-plaintd of his shoulder hurting him but Dr. Nesbitt could find no cause of the pain. For this reason, he sent Mr. Lucas to Dr. Irby, a neurosurgeon, for examination. Dr. Irby advised Dr. Nesbitt that he could find nothing neurologically wrong with Mr. Lucas. Dr. Irby also reported that a good deal of plaintiff’s difficulties were psycho-physiological in nature.
Dr. Nesbitt examined plaintiff for neck and back pains in early 1971 and finally in mid 1974 for complaints of neck pain and a headache.
In June, 1970, Dr. D. M. Kingsley, an orthopaedic surgeon, examined plaintiff who then complained of finger, arm and shoulder pain. This doctor noted a slight degree of stiffness in the two fingers and sensitivity at the tips of them. X-rays revealed fractures of only the tips of these fingers. This doctor found that plaintiff’s finger joints were not damaged in the accident and that only the tips were involved. He thought that the slight residual stiff *529 ness he noted in the two injured fingers should dissipate in time with usage and should not be permanent. Dr. Kingsley-testified that he thought plaintiff was overreacting and testified that his complaints of arm and shoulder pain could not be related to the finger injury.
Dr. Ray E. King examined plaintiff on two occasions in late 1970 and in December, 1973. During these visits plaintiff complained of his entire left hand, left arm swelling and pain going into the base of the neck, hernia, cervical neck pain and increased sensitivity to the tips of the two affected fingers. Dr. King found full motion in the fingers of the left hand and his x-rays revealed a healed fracture at the extreme tip of the left ring finger. Dr. King found some hypersensitivity of the fingertips and, based on this, concluded that plaintiff’s' left hand as a whole was impaired approximately 5 to 10 percent.
Dr. Austin W. Gleason, an orthopaedic surgeon, examined plaintiff in March, 1971, at which time plaintiff complained of pain from his ring and middle finger traveling up his arm past his elbow to his shoulder along with headaches and occasional numbness of the entire left arm. This doctor testified that plaintiff could not make a fist because he would not flex his knuckle joints but found full motion in the interphalangeal and distal joints, that is, the last two joints of the fingers. X-rays revealed only a healed fracture to the tip of the ring finger. Dr. Gleason’s conclusion was that plaintiff might have a nerve root irritation in the cervical region but could not relate this to the hand injury and suggested that much of plaintiff’s difficulty was due to his psychological overlay.
There were many other details concerning the findings and opinions of the experts. Suffice it to say that none of them found any evidence of injury to plaintiff other than to the tips of his two fingers and that the only result that they could connect causally was that injury was the minimum residual stiffness in these fingers.
There is evidence that plaintiff had a prior injury affecting his left index finger with some residual stiffness but the extent of this is not shown. There is evidence that plaintiff had residual effects of polio on his right side but the evidence does not show that it significantly affected the use of the right arm and the hand. The trend of the evidence on this is that, for all practical purposes, there was no impairment of his right arm and hand.
Testimony by plaintiff and lay witnesses was given regarding his alleged disability. In summary, it was to the effect that plaintiff’s disability resulted from periodic pain, swelling and discoloration of the whole left hand, parts of the left hand in addition to the two injured fingers and on occasions parts of the left arm. Although it may be that plaintiff does experience these complaints and they may be disabling, the evidence does not preponderate that these conditions were caused by the injury to the fingertips. The evidence-preponderates that his complaints are basically the result of the longstanding arthritis and the only result of the fingertip injury is the minimum stiffness in those two fingers which is not disabling. We therefore conclude that the evidence as a whole does not preponderately show a causal connection bétween plaintiff’s injury and any disabling condition.
In Johnson v. Travelers Insurance Co., 284 So.2d 888 (S.Ct.1973), the law with regard to plaintiff’s burden of proof on the causal relationship in a workman’s compensation case is stated as follows:
“The plaintiff has the burden of proof in a workmen’s compensation case. Burk v. Security Ins. Co. of New Haven, 248 La. 177, 177 So.2d 278 (1965); Adams v. Home Indemnity Co., La.App., 180 So.2d 51, writ ref. 248 La. 697, 181 *530 So.2d 398 (1965); Wells v. Kaiser Aluminum and Chemical Corp., La.App., 185 So.2d 37 (1966). It is incumbent upon the plaintiff to establish the causal relationship between the accident and his disability by a preponderance of the evidence. Russell v. Employers Mutual Liability Ins. Co. of Wis., 246 La. 1012, 169 So.2d 82 (1964).”
Accordingly, for reasons assigned the judgment of the lower court is reversed. Judgment is now rendered in favor of defendants, rejecting plaintiff’s demands and dismissing his suit. All costs of the trial and appellate courts are assessed against the plaintiff.
Reversed and rendered.
DOMENGEAUX, J., dissents, and assigns written reasons.