342 So.2d 591 (1977)
B. J. LUCAS, Plaintiff-Appellee-Relator,
v.
INSURANCE COMPANY OF NORTH AMERICA et al., Defendants-Appellants-Respondents.
No. 57814.
Supreme Court of Louisiana.
January 24, 1977.
Concurring Opinion February 9, 1977.
Rehearing Denied March 2, 1977.[*]
*593 Howard N. Nugent, Jr., Ford & Nugent, Jr., Alexandria, for plaintiff-appellee-relator.
John W. Scott, Stafford, Randow, O'Neal & Scott, Alexandria, for defendants-appellants-respondents.
TATE, Justice.
The plaintiff Lucas sues his employer ("Miller") and the latter's insurer ("North America") for workmen's compensation benefits. The district court found the plaintiff to be permanently and totally disabled and awarded him maximum benefits, together with penalties and attorney's fees for the arbitrary non-payment of compensation benefits due.
Upon the defendants' appeal, the intermediate court reversed. 326 So.2d 525 (La.App.3d Cir. 1975). It found no causal relation between the employment accident and the disability proved.
We granted certiorari, 330 So.2d 317 (La.1976), because we felt that the intermediate court had, in reversing, overlooked certain principles involving medical proof of a causal relationship between a work-accident and a subsequent disability.
The chief issue before us concerns the requisites for proof of medical causation of a physical disability consequent to a workaccident. Other issues involve (a) the legal test of total disability of a skilled workman and (b) the defendant insurer's liability, if any, for penalties for the allegedly arbitrary non-payment of workmen's compensation benefits due.
Facts
Lucas, aged 40, had been employed as an oilfield truck driver for twenty-one years at the time of the accident. He was then employed as driver of a "road truck"-work which the evidence shows includes not only driving, but much manual labor in assisting in loading and unloading pipe and oilfield supplies from his vehicle.
While handling heavy pipe on February 15, 1970, a rolling pipe crushed and fractured the tips of his middle and ring fingers of his left hand. Lucas received medical attention at a nearby hospital, but worked for the remainder of the day. He secured additional medical treatment on February 16, and returned to work the following day, A few days later, he was discharged because, he says, he could not perform the work.
North America commenced the payment of workmen's compensation. On March 17, 1970, about two months later, Lucas accepted employment with another firm as the driver of an oilfield rigging truck, where he has been steadily employed since that time. (As will be seen, this type of employment requires less physical labor requiring use of the hands in handling heavy oilfield equipment.)
The plaintiff contends that, due to residual pain and swelling of his fingers and left hand upon use and heavy work with them, he is unable to perform the duties of the skilled occupation in which injured, i. e., driver of a road-truck, and that he cannot perform without substantial pain even the lighter duties in which presently employed, i. e., gin-pole truck driver, without special mechanized assistance and additional help furnished him through the benevolence of his present employer.
The defendants contend, and the majority of the court of appeal agreed, that the plaintiff's work-injury was only a fracture *594 of the tips of two fingers of the left hand, which eventually healed with disability.[1]
The plaintiff, on the other hand, contends that although only two fingers were fractured, the crushing injury involved soft tissue, tendon, nerve, and joint-stretching injuries of a more substantial nature, and it also activated a previously latent arthritic condition.
Before reverting to the medical evidence as to precise causation, we deem it appropriate to summarize the substantial and virtually uncontradicted testimony of the lay witnesses and of the two general practitioners (who treated and observed the plaintiff on frequent occasions during the four years between the accident and the trial):
1. Before the accident, the plaintiff suffered no disability whatsoever with regard to his left hand. Any latent arthritic condition was asymptomatic.
2. After the accident, his left hand and especially the two fingers in which fractures had occurred frequently became swollen and painful and discolored (purplish or bluish-red), especially upon extended use. The objective symptoms were noticed not only by his supervisors and co-workers, but also by the general practitioners who treated him, who prescribed pain relievers, and one of whom sent him to specialists to try to discover the medical cause of this obviously disabling condition and of the patient's other complaints.
3. Because of this painful condition, the plaintiff can no longer perform the duties of the skilled occupation in which injured, i. e., road-truck driver, which required the use of the hands in loading and unloading equipment. He can more easily perform the duties of gin-pole operator, because there the non-driving duties are primarily performed by manipulating lift equipment from controls in the cab rather than actually participating in loading and unloading. Even so, he suffers painful episodes, and he could not perform his present duties except for the forbearance of his present employer (who stated he did so to obtain the exceptional skills of this dedicated employee) in relieving him of the ten percent manual labor duties normally associated with the job and in providing his truck with a special air-seat and power-assisted brakes (at a combined cost of nearly one thousand dollars), in order to permit him to drive and to operate the truck controls with minimized strain upon his disabled left hand and fingers.
4. The work of truck drivers, whether road-trucks or gin-pole trucks, in the oilfield industry frequently requires twelvehour days and sixty-hour weeks, as well as the driver's availability at any time of day or night to perform the hauling and location duties of the occupation. However, the operator of a gin-pole truck primarily performs "location" work, with his truck serving as a sort of mobile crane by which to load and unload heavy equipment upon itself and for other purposes. Even more than the driver of a road-truck, the driver of a gin-pole truck has frequent intervals of simply waiting at the location in order to perform the specialized work for which his truck is equipped.
Legal principles applicable as to disability
The virtually uncontradicted evidence of the attending general practitioners and of the lay witnesses proves that, following the work-accident, the two fingers with healed fractures became swollen and discolored as a result of use in heavy labor or of even extended use in driving the truck. It also proves that the painful symptoms prevented the plaintiff from performing the heavier portion of the duties of an oilfield roadtruck driver, the occupation in which he was injured.
The primary issue is whether the workaccident was the cause of this undoubted disability. Nevertheless, before discussing this primary issue, we deem it appropriate to summarize the legal principles applicable *595 to determine compensable total disability of this injured employee.
An injured employee is deemed totally and permanently disabled "whenever he is unable to perform work of the same or similar description to that which he performed before the accident." Futrell v. Hartford Accident & Indemnity Company, 276 So.2d 271, 273 (La.1973). As we stated in Lindsey v. Continental Casualty Co., 242 La. 694, 138 So.2d 543, 544 (1962):
"[A] skilled worker is deemed totally disabled within the intendment of the law if he is unable to do work of the same character as that which his training, education, and experience qualify him to perform, without unusual difficulty or danger. This rule is applicable to a skilled worker who cannot perform a substantial portion of the work incident to his special occupation. The fact that he may be able to perform the work through assistance does not alter the result. The law looks only to the occupation capacity of the injured employee." See also Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849 (1969).
In the event of such proven total disability, the employee's recovery is not defeated if he can obtain other types of skilled work, such as driving a different type truck at a lesser (or greater) rate of pay. Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695 (1952). See also Futrell v. Hartford Accident and Indemnity Co., 276 So.2d 271 (1973). As Futrell notes, by reason of the work-caused disability, the employee is thereby placed at a disadvantage in securing employment in a labor market restricted in opportunity to him because of his work-disability. Further, the disability is nevertheless compensable if the employee returns to work and performs the duties but only with substantial pain.[2]Williams v. Hudson East, 261 La. 959, 261 So.2d 629 (1972).
Under these circumstances, if the painful condition of the plaintiff's two fingers resulted from the accident that fractured them, the plaintiff is entitled to compensation for permanent and total disability.
Medical causation
As in other civil suits, the employee in a workmen's compensation proceeding has the burden of establishing the disability and causal relation with the employment accident by a preponderance of the evidence. Prim v. City of Shreveport, La., 297 So.2d 421 (1974). Nevertheless, "it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that somehow the employment caused the disability." Malone Workmen's Compensation Law, Section 252 at p. 300 (1951).

(1)
Two general practitioners repeatedly treated and examined the plaintiff over the four years between the accident and the trial. Based upon their personal observation of the swelling, stiffness, and pain in the fingers involved, as well as upon local x-rays showing degenerative changes, they thought that the cause of the plaintiff's disability was an arthritis activated into painfulness as a result of the crushing injuries to the fingers of the hand.
The court of appeal discounted this testimony, since the doctors admitted that the arthritic painfulness was not "necessarily" caused by the accident and since the x-ray showings and some of the complaints showed arthritis present elsewhere in the plaintiff's hands and body.
However, the chief and most persistent complaints of the plaintiff over the several years were with reference to these fingers, which alone (although sometimes with the hand to which attached) were observed by the physicians as swollen and discolored, objective symptoms of a painful condition. The evidence also reflects that, prior to the *596 accident, no such complaints had ever been suffered.
A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition, Gradney v. Vancouver Plywood Co., 299 So.2d 347 (La.1974); Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973); Bertrand v. Coal Operators Casualty Co., 253 La. 115, 221 So.2d 816 (1969); Gates v. Ashy Construction Co., 171 So.2d 742 (La.App.3d Cir. 1965), certiorari denied, 247 La. 678, 173 So.2d 542 (1965).
Further, an employee's disability is compensable if a non-disabling pre-existing condition is activated or precipitated into disabling manifestations as a result of a work-injury. Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973).

(2)
Additionally, however, the medical evidence suggests other causes for the complaints, although the specialists (who examined the plaintiff only on an isolated few occasions) could not definitely ascribe them as disabling the plaintiff.
Dr. King, an orthopedist, found swelling in the fingers and felt they resulted from contusions to the digital nerves of the fingers, possibly resulting from fibrosis involving these nerves. He felt this to be a residual of the accident, in addition to a 5% to 10% restriction of motion.
Because of the described symptoms, Dr. King also suspected a causalgia from the injury involving primarily the median nerve of the left arm. Although he ultimately ruled this seriously disabling condition out (since he found no objective symptoms on the occasion of his two examinations), it is of interest that this condition was also suspected by two other specialists, on the basis of the plaintiff's complaints.
Dr. Gleason, another orthopedist, also suspected a causalgia (also known as a "reflex sympathetic dystrophy"), a relatively rare reflex stimulation of the autonomic nervous system occurring in very nervous people. He likewise ruled it as not diagnosed, based on the lack of objective verification. However, he felt arthritic changes or fibrosis stemming from the injury might be a cause of the pain and swelling of the fingers.
Dr. Irby, a neurosurgeon, after extensive testing, found no objective symptoms of a neurological condition. He also suspected a causalgia (reflex sympathetic dystrophy), one of the symptoms of which is alterations in the skin color resulting from a change in the blood flow to the area. However, after undergoing painful myelograms, the plaintiff left before specific tests could be conducted to verify or disprove this disabling condition. Dr. Irby felt, however, that the lack of symptom of disruption of blood flow during his observations of the plaintiff contributed to his "impression" that this condition was not the cause of the plaintiff's disability. He admitted that he did not rule out arthritis traumatically induced as the cause of any disability found in the plaintiff.
Dr. Lowrey, an orthopedist, also found 15% impairment of the usefulness of the hand as a whole as a residual of the injury to the two fingers, although he thought that the claimant could return to his original occupation. He found no swelling present, however, on the one occasion in which he examined the patient. This doctor felt that the restriction of motion resulting in such impairment of function was caused by a residual fibrosis.
Thus, the examinations by these specialists (on isolated occasions) for the most part indicate some permanent hand-finger residual of the accident, although the specialists themselves could not estimate the painfulness. Whether pain is substantial enough to be disabling, however, is ordinarily not a medical question but an issue to be decided by the trier of fact on the basis of *597 the preponderance of the medical and lay evidence. Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743 (La.1975); Williams v. Hudson East, 261 La. 959, 261 So.2d 629 (1972).
Likewise, the opinion of some of these specialists that the employee was not disabled from driving a truck is not determinative of the legal issue of compensable disability to do the work in which the employee was injured, which involved not only driving a truck but manual labor of loading and unloading as an integral part of the duties of the employment. A medical estimate of disability or not must yield to the legal test thereof. Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743 (La.1975); Williams v. Hudson East, 261 La. 959, 261 So.2d 629 (1972).

(3)
We conclude, therefore, that under the principles enunciated the plaintiff has preponderantly proved that the disabling condition of the two fingers of his left hand resulted from their fracture and the crushing and stretching injuries sustained in the work-accident. Never before, and consistently afterwards, he has been unable to use these two fingers in more strenuous work without their painful swelling and discoloration, which the medical evidence indicates to be a possible medical consequence of such an injury.
This burden has been met, whether the precise medical causation of this proven disability is an aggravation of a pre-existing arthritic condition precipitated into painfulness by the work-injury and the consequent disuse of the injured member, as the general practitioners felt, or instead a residual fibrosis involving the nerves, as two orthopedists felt, or both. Exact medical diagnosis of a proven disability continuously following an accident is not a pre-requisite to recovery, so long as the medical evidence indicates there to be a reasonable possibility of a causal connection between the proven residual disability and the work-accident which initiated it.
We therefore believe that the intermediate court erred in reversing the factual findings of causally-related disability by the trial court, which were founded upon a reasonable evidentiary basis. See also Gradney v. Vancouver Plywood Co., 299 So.2d 347 (La.1974) and Canter v. Koehring Company, 283 So.2d 716 (La.1973). The plaintiff is entitled to recovery of benefits for total and permanent disability, as awarded by the trial court.
Penalties
The trial court also awarded penalties for the arbitrary non-payment of compensation undoubtedly due. It reasoned that the insurer was arbitrary in relying on the opinion of the specialists that the plaintiff could return to work as a truckdriver, without also informing them that the plaintiff's duties also involved heavy loading work from which, by reason of the painful residual, the plaintiff was disabled.
On review, the insurer points out that, immediately after suit, it brought the plaintiff's compensation up to date for a partial disability of the hand and continued to pay him thereafter. See footnote 1 above.
We agree with the defendant insurer that it was reasonably entitled to rely upon the opinion of the specialists, particularly Dr. Lowrey, that the plaintiff was not disabled by reason of accident-residual.
We likewise agree with the insurer that, at the time it received Dr. Lowrey's report, it was obligated to pay compensation for the partial disability thereby reflected. However, reduced penalties must nevertheless be allowed because, following demand and receipt of Dr. Lowrey's report, the insurer did not reinstate compensation payments until after more than sixty days had elapsed and until after suit was filed.
The assessment of penalties and attorney's fees in the instant case is governed by La.R.S. 22:658. Under the statute, penalties arise only from an arbitrary refusal to pay within sixty days "after receipt of such proofs and demand therefor."
*598 Following Dr. Lowrey's report of November 3, 1970, the medical evidence was clear that the employee had a partial disability, fixed by Dr. Lowrey as fifteen percent of the hand as a whole.
The insurer asserts, however, that the defendant made no demand for payment prior to filing suit.
The record reflects that on November 17, 1970, the employee's attorney directed a letter to the employer concerning the compensation claim. Although the letter itself is not in evidence, the insurer's reply of December 3, 1970, denied the payment of compensation.
Again, on February 15, 1971, the employee's attorney transmitted a letter to the insurer. In reply, on February 24, the insurer rejected a settlement offer and made no tender of the weekly compensation.
In our opinion, these communications from legal counsel satisfy the demand requirements for the payment of any compensation due, whether based on total or partial disability. The demand for workmen's compensation is required to be in no particular form, as long as it informs the insurer that the insured asserts a claim for compensation under the policy. In our opinion, the letters of the employee's attorney constituted a demand for the payment of compensation. Since these communications were received more than sixty days prior to suit, the demand satisfied the statutory time schedule.
It is now well established that if an employee has a partial disability, the insurer is not justified to terminate all compensation. If the insurer arbitrarily withholds compensation for partial disability, the insurer may be assessed penalties and attorney's fees. Guillory v. Travelers Insurance Co., La., 294 So.2d 215 (1974); Fruge v. Pacific Employers Insurance Company, 226 La. 530, 76 So.2d 719 (1954); Breen v. Bituminous Cas. Co., 249 So.2d 338 (La.App.4th Cir. 1971); Parish v. Standard Acc. Ins. Co., 158 So.2d 892 (La.App.3d Cir. 1963).
The insurer asserts, however, that there was a genuine dispute even as to partial disability of the hand. It argues that none of the physicians found the employee to be totally disabled, and most of them did not report a partial impairment of the hand.
Medical opinion as to total disability is irrelevant at this point. The question presented is whether the insurer was arbitrary in not paying compensation for partial disability prior to suit. We think so.
When Dr. Kingsley examined the employee approximately three months after the accident, he found "some residual stiffness." Apparently, he was of the view that exercise would reduce the stiffness and made no rating of the impairment.
On November 3, 1970, Dr. Lowrey transmitted to the insurer a medical report that rated the impairment as "15 percent of the hand as a whole."
On December 3, 1970, the insurer wrote plaintiff's counsel, referring to Dr. Lowrey's report, but refusing to reinstate compensation.
The compensation for partial disability was paid only after suit was filed. At the trial, the insurance adjuster acknowledged that the compensation was paid after reviewing the report of Dr. Lowrey. Tr. 731.
Under the circumstances, the withholding of compensation for partial disability until after suit was filed on April 14, 1971 was without probable cause. Hence, the employee is entitled to penalties and attorney's fees.
On April 30, 1971, the insurer deposited $824.00 in the registry of the court for the arrearage in partial-disability compensation. The deposit included 5% interest. The weekly compensation rate was $17,06. Apparently, the remaining weekly payments were made promptly when due.
Under the statute, the plaintiff is entitled to a 12% penalty on that portion of the compensation deposit more than sixty days in arrears and a reasonable attorney's fee for this litigation. In our opinion, an attorney's fee of $1,500.00 is reasonable for recovery of such compensation benefits. (The plaintiff's counsel is of course also entitled *599 to recover attorney's fees provided by his contract and as governed by statute for recovery of the additional benefits herein awarded.)

Decree
For the reasons assigned, we reverse the judgment of the court of appeal and reinstate the judgment of the district court awarding the plaintiff workmen's compensation benefits for total and permanent disability and legal interest thereupon (less credit for payments made), together with costs and medical expenses, with the plaintiff's attorney's fee to be fixed upon compensation benefits so awarded as provided by that judgment.
However, the district court's award to plaintiff against the insurer of penalties and attorney's fees for non-payment of compensation benefits is amended so as to award the plaintiff a penalty of 12% of that portion of partial disability deposit of $824.00 in arrears for more than sixty days and penalty attorney's fees in the sum of $1,500.00
COURT OF APPEAL JUDGMENT REVERSED, AND TRIAL COURT JUDGMENT (AS AMENDED) REINSTATED.
SANDERS, C.J., concurs in part and dissents in part and assigns reasons.
SANDERS, Chief Justice (concurring in part and dissenting in part).
I agree that the plaintiff, Lucas, has a compensable partial disability equal to fifteen percent loss of use of the hand. In fact, the insurer has already paid him the compensation for this disability. Since payment was made only after suit was filed, the decree properly assesses penalties and attorney's fees based on partial-disability compensation. See Guillory v. Travelers Insurance Co., La., 294 So.2d 215 (1974); Fruge v. Pacific Employers Insurance Company, 226 La. 530, 76 So.2d 719 (1954).
I strongly disagree, however, with the finding that the plaintiff is totally and permanently disabled.
As in other civil suits, the employee in a workmen's compensation proceeding has the burden of establishing the disability and causal relation with the employment accident by a preponderance of the evidence. See Prim v. City of Shreveport, La., 297 So.2d 421 (1974) and the authorities cited. In the case of a skilled employee, the evidence must establish that the employee is unable to do work of the same or similar character for which his training and experience qualify him. Futrell v. Hartford Accident & Indemnity Company, La., 276 So.2d 271 (1973); Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50 (1961); Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1 (1953); Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695 (1952).
Thirteen physicians examined the employee at various times prior to trial. Two of them testified at the trial. The testimony of eleven was submitted on reports or depositions. According to my appreciation of the testimony, none of the physicians found the plaintiff disabled from working at his prior employment. Quite to the contrary, the specialists found his complaints to be exaggerated, inconsistent, and unjustified in view of the physical findings.
Plaintiff has been steadily employed as a truck driver since March 17, 1970, about two months after his injury. After three months with his new employer, he was promoted to a larger vehicle and assigned a helper. According to the testimony, he was given this promotion because of his skill, experience, and seniority.
The plaintiff is described by his employer as his "highest paid" and "best driver." In my opinion, the majority is in error in finding that the plaintiff is not fully discharging all the regular duties of a truck driver, including manual labor. Plaintiff, himself, frankly acknowledged that the work he has been doing since shortly after the injury "contains the same thing I was doing before." Tr. 217.
In my opinion, the plaintiff has failed to establish permanent and total disability by a preponderance of the evidence.
*600 For the reasons assigned, I respectfully dissent.
NOTES
[*] Sanders, C.J., and Summers, J., were both of the opinion that a rehearing should be granted.
[1] The defendants do admit that the plaintiff suffered a fifteen percent permanent partial disability of the left hand, for which (by the time of trial) he had been compensated for 150 weeks at $17.06 per week. See La.R.S. 23:1221(4)(e)(o).
[2] Here, the claimant, with a wife and seven children dependent on him, returned to work despite the pain to support them and to save his home from foreclosure.