JjEDWARD A. DUFRESNE, JR., Chief Judge.
This is an appeal by Leroy Kelly, Ernest Smith and Dewight Murray, plaintiffs-appellants, from a judgment dismissing their claims for damages against Jamie Lugo and Allstate Insurance Co., defendants-appellees, in this automobile accident suit. Because the record discloses no legal or manifest factual error on the part of the trial judge, we affirm.
The basic facts are that on March 19, 1998, the three plaintiffs were in a van stopped in traffic when they were rear-ended by a small car driven by Lugo. Plaintiffs said there was a substantial impact, but Lugo said her foot slipped off the brake pedal and her car idled into the van at maybe three to five miles per hour. Photographs of the van showed no discernible damage; those of the car showed damage to the left front fender and hood, which had apparently gone under the rear bumper of the van on impact. Although the left headlight frame appeared bent, the lenses were not broken.
Lugo’s liability for the accident was not contested and therefore the only | {.issues for trial were whether plaintiffs had sustained any damages. The police report of the accident was admitted into evidence by joint stipulation and it indicated that all of the plaintiffs were wearing seat belts and that none of them were injured. However, the three plaintiffs testified that they were injured and introduced, also by joint stipulation, medical reports which they asserted substantiated their claims. Only the plaintiffs and Lugo testified.
Leroy Kelly, the driver, testified that the van was stopped when the collision occurred. He said that he had his foot on the brake and that the van shook on what he described as a “heavy” impact, but did not move forward. He related that a police officer was apparently handling another accident in the opposing lanes, and he came over shortly after the present incident. The officer instructed Kelly to drive the van into a nearby fast food restaurant parking lot, and Lugo’s car was pushed into the same lot after it failed to start.
Kelly said that he first felt pain in his neck and back some 20 to 30 minutes after the collision. He stated in his deposition that he told the investigating officer that he was injured, but could not recall this conversation at trial. He missed no work, and did not see a doctor until five days *954 later, and then on the recommendation of his attorney.
The report of his medical treatment shows that on the first visit of March 24, 1998, he told the doctor that he was in a vehicle traveling 15 to 20 miles per hour when he was rear ended by another car. He gave a history of a prior automobile accident five years before with cervical and lumbar injury. He reported pain at the base of the neck, but not in the back. X-rays of the cervical spine were normal. The diagnosis was 13cervical/trapezius strain. Motrin was prescribed, but Kelly never took any of it. He went to physical therapy three times by April 30, and on this last visit he told the doctor that he was still suffering pain in the neck. That was the last visit. On cross examination Kelly first said that he had been in a previous accident, then he said that he did not remember the earlier accident, injury, or any medical treatments for it, and finally he said that he remembered the incident but not any of the details.
Ernest Smith was in the front passenger seat wearing his seat belt. He described the impact as “pretty heavy.” He said he began to feel pain in his lower back and neck about an hour after the collision. He said he did not recall telling the investigating officer that he was not injured and indeed did not remember even talking to the officer. He also did not remember talking to Lugo. He did not mention missing any work because of the accident.
Smith first sought medical treatment (with the same doctor who had seen Kelly) four days after the accident, and also on advice of counsel. His medical report repeats that the van was traveling 15 to 20 miles per hour when struck from behind, but Smith did not recall telling the doctor that. His complaints were of low back and neck pain. The physical examination did not show any spasms. The X-ray report says there was a loss of normal cervical lordosis “apparently reflecting spasm.” The radiologist’s impression was cervical spasm. Smith returned for about ten physical therapy treatments and was discharged on June 19,1998.
Dwight Murray testified that he was sitting in the back of the van in a chair that was somehow immobilized. He described the impact as “real hard,” and said that it threw him out of the chair and onto the floor of the |4van. He said that he immediately experienced pain in his lower back, shoulders and neck. He denied telling the investigating officer that he was not hurt, and also denied even speaking to him. He had no explanation of how the officer had gotten his name and address and reiterated that he never spoke to the officer. He said he did not miss any work because of the accident, but indicated that he could not afford to do so.
Murray also waited four days to seek medical treatment and went to the same doctor as had Kelly and Smith. The initial report shows that Murray told the doctor that he was restrained in the rear seat and was knocked out of that seat by the impact. It further shows that he reported experiencing symptoms the next morning. He also gave a history of a ruptured low back disc in an earlier automobile accident. The initial diagnosis was cervical/trapezius and lumbar strain.
Treatment consisted originally of two physical therapy sessions and medication. On April 18, Murray returned for an office visit still complaining of neck and back pain. Three months later, on July 27, he returned stating that he had been doing better, but had recently twisted his back in bed and could not move. He was then referred to an orthopaedic surgeon who diagnosed a ruptured disc in the lumbar region after a physical examination. No other diagnostic studies were done. The *955 report of this second doctor shows that Murray told him of a prior back injury which had resolved, but does not show mention of a prior ruptured disc. On August 10 and 12, he attended two more physical therapy sessions, but apparently did not seek further treatment.
Jamie Lugo testified that her foot slipped off of the brake and her car idled into the van at three to five miles per hour from about a foot away. |KShe described the impact as “light to moderate.” She said that all three plaintiffs said they were not hurt and that they were planning to drive off had the officer not come over from the other accident investigation.
On the above evidence the trial judge concluded that the plaintiffs had not shown by a preponderance of the evidence that they had been injured in the accident. In his reasons for judgment he stated that he believed Lugo’s description of the impact as being moderate, evidently because there was no discernable damage to the van. He noted that plaintiffs’ testimony that they had either told the investigating officer that they were injured or did not speak to him at all was in direct contradiction with the report itself which indicates no injuries to plaintiffs. He also noted that plaintiffs had not sought treatment until days later and then after consulting with an attorney, that all saw the same doctor and claimed similar injuries to their necks and backs, and that there were no objective findings- to substantiate the claimed injuries. Finally, he noted that there were other inconsistencies in plaintiffs’ testimony appearing in the record which cast further doubt on their claims of injuries.
The above findings are all factual determinations and thus the standard of review on appeal is whether those findings are manifestly erroneous or clearly wrong, Rosell v. ESCO, 549 So.2d 840 (La.1989). On the evidence presented at trial, we cannot say that the findings of the trial court that plaintiffs were not injured were clearly wrong, based as they were on credibility determinations, inconsistencies in testimony, and a reasonable view of the remaining evidence, see Perow v. Lenzly, 30,883 (La. App 2nd Cir. 8/19/98), 716 So.2d 519. We therefore must affirm those findings.
 Plaintiffs admit that the manifest error standard is proper here. However, they assert that the trial court fell into legal error in failing to apply the rule of Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977), which is that:
[a] claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there is a reasonable possibility of causal connection between the accident and the disabling condition.
We disagree.
Applicability of the above rule is only appropriate when it has been established that plaintiff was healthy before the accident, was unhealthy afterwards, and there is a reasonable possibility of a causal connection between the accident and the injury. In the present case, the second element was found by the trier of fact not to exist. It is not that the trial judge found that plaintiffs showed injuries after the accident which they did not have before, but rather that he found that they had no post accident injuries at all. That finding, is of course, a factual one subject to the manifest error standard. Lucas is therefore inapplicable to the present case.
*956 For the foregoing reasons the judgment of the district court in favor of defendants is hereby affirmed.

AFFIRMED.