# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 05-643


DALTON LANDRY

VERSUS

FURNITURE CENTER


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 03-00901
SAM L. LOWERY, WORKER'S COMPENSATION JUDGE


\*\*\*\*\*\*\*\*\*\*


## JOHN D. SAUNDERS
## JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Oswald A. Decuir, and Glenn B. Gremillion,
Judges.

### AFFIRMED IN PART, REVERSED IN PART.

Mark Alfred Ackal
Attorney at Law
P. O. Box 52045
Lafayette, LA 70505
(337) 237-5500
Counsel for Defendant/Appellee:
Furniture Center


Harry Karl Burdette
The Glenn Armentor Law Corp.
300 Stewart St.
Lafayette, LA 70501
(337) 233-1471
Counsel for Plaintiff/Appellant:
Dalton Landry

**SAUNDERS, Judge.**

This is a workers' compensation case. The workers' compensation judge held that claimant Dalton Landry suffered an injury during the course and scope of his employment at Furniture Center, but the injury did not cause him to become disabled. The trial court found that Mr. Landry had not met his burden of proof and, therefore, his claim for temporary total benefits was denied. Accordingly, the trial court held that the defendants were not arbitrary and capricious in their denial of payment of daily indemnity benefits. However, the court did order the defendants to pay the medical expenses of the USMC Cam Walker and the Reese shoe that Mr. Landry was directed to wear. We affirm the decision of the trial court in part and reverse in part.

**FACTS AND PROCEDURAL HISTORY**

The accident giving rise to this litigation occurred on June 8, 2002 during the course and scope of the employment of claimant, Dalton Landry, at Furniture Center. Approximately two hours after Mr. Landry arrived at work, he was walking to the front of the store to greet customers when he accidentally slammed his right foot into the leg of a sofa. The store manager, Wes Ferguson, who witnessed the accident, offered Mr. Landry medical treatment and offered to complete an accident report, but Mr. Landry declined. Mr. Landry voiced some complaint about the pain at the time of the accident, but continued working the rest of the day.

On July 10, 2002, Mr. Landry saw his family physician, Dr. Paul Landreneau, and complained that he had been suffering from pain in his right foot for the past two weeks. However, Mr. Landry never mentioned his work-related accident. Dr. Landreneau ordered an x-ray of Mr. Landry's right foot, which showed that he had a "non-displaced fracture of the mid right second metatarsal." Dr. Landreneau placed no restrictions on Mr. Landry's ability to work, but he did prescribe a special shoe,

also known as the "Reese shoe" for Mr. Landry to wear as his bone fracture healed. Over the next month, Mr. Landry continued to work on a full-time basis as a furniture salesman at Furniture Center.

On July 17, 2002, Mr. Landry returned to Dr. Landreneau's office and told the doctor that his condition was improving, as he was "almost pain free" when he wore his Reese shoe. He returned to Dr. Landreneau's office again on the 14th of August and the doctor noted, "Less pain in foot, none when wearing Reese shoe." It was at this visit that Mr. Landry asked Dr. Landreneau for a referral to Dr. Muldowny for his knee replacement surgery. Mr. Landry had suffered from serious problems with his left knee prior to the accident and had been informed by his doctor in 2001 that he would eventually need knee replacement surgery. Mr. Landry explained to his doctor that he would wait until he had paid off his debts before he would undergo the surgery. He expected to have all of his debts paid off by September 2002.

On September 4, 2002, Mr. Landry was called into a meeting and was informed that his employer would be going out of business, and that the store would be closed on September 13, 2002. A liquidation company was set up to come in and begin a liquidation sale on September 19, 2002. All Furniture Center employees had the option of working for the liquidation company during the sale.

After leaving the meeting that day, Mr. Landry went to Dr. Landreneau's office, complaining that his foot pain had worsened and also requested a referral to see Dr. Muldowny in reference to his foot pain. On September 9, 2002, Mr. Landry scheduled his knee surgery with Dr. Muldowny for early October and was instructed to return in three weeks for a pre-op visit with the doctor. Throughout this time, Mr. Landry was continuing to work full-time at Furniture Center.

In September, Mr. Landry, for the first time, requested that an accident report for workers' compensation be filled out by the office manager, Jeannie Lanning. Ms. Lanning provided the Form 1007, and Mr. Landry filled it out himself. The form was backdated to July 12, 2002, the date that Mr. Landry claimed that he first learned of the fracture. Mr. Landry continued to work on a daily basis, and on September 18, 2002, he signed an employment contract with the liquidation company and continued to work as a furniture salesman. He worked with the liquidation company up until October 1, 2002, the day before his pre-op visit with Dr. Muldowy.

At his pre-op visit with Dr. Muldowny, Mr. Landry requested a disability slip from the doctor. The slip, however, did not state the reason why he was declared to be "disabled." On October 8, 2002, Mr. Landry underwent left knee replacement surgery and remained in the hospital until October 16, 2002.

Around the time of Mr. Landry's surgery, Judy Landry, the claimant's wife, contacted the insurance adjuster, Kristen Shortess, and informed her that her husband was entitled to weekly benefits from the date of the accident, explaining that he has not worked since the accident. Ms. Shortess then requested a disability slip to prove Mr. Landry's disability. The disability slip that Mr. Landry had obtained from Dr. Muldowny showed that Mr. Landry was only disabled from September 9, 2002. Ms. Shortess, believing that Mr. Landry's benefits were overdue, wrote a letter to Ms. Lanning on November 4, 2002, requesting that the benefits be paid to him in a timely manner. Ms. Lanning then advised Ms. Shortess that Mr. Landry was never disabled due to his injury, and that he had continued to work full-time from the time of the accident until October 1, 2002, when he had left work to have knee replacement surgery. Upon discovering this information, Ms. Shortess began to investigate Mr.

3

Landry's claim, and after reviewing all of the medical records and taking statements, she concluded that Mr. Landry was never disabled from performing his job as a result of his injury on the job. Therefore, she refused to pay weekly indemnity benefits.

On February 4, 2003, Dalton Landry filed a disputed claim for compensation at the Office of Workers' Compensation against Furniture Center and Summit Insurance Company. In the claim, Mr. Landry alleged that his employer and their insurer failed to pay temporary total disability benefits, failed to pay for medical treatment with Dr. David Muldowny and Dr. Paul Landreneau, and failed to approve prescription medication in relation to his work-related injury that occurred on June 8, 2002. He further alleged that such actions were arbitrary and capricious and he sought penalties, attorney fees, and judicial interest for those acts. On April 15, 2003, claimant amended his complaint, and Louisiana Retailers Mutual Insurance Company was named as a defendant in the case. On April 24, 2003, defendant, Summit Insurance Company, was dismissed from the case.

The trial court found that Mr. Landry was never disabled by the bone fracture in his foot that was sustained while he was on the job. Rather, the court found after examining all of the medical evidence and testimony that his disability was caused by venous insufficiency. The court held that Mr. Landry had not met his burden of proof and, therefore, his claim for temporary total benefits was denied. Accordingly, the court held that the insurance company was not arbitrary and capricious in its denial of payment. However, the court did order that the employer and its insurer pay the cost of a walker and a walking boot prescribed for Mr. Landry. Claimant now appeals.

**ASSIGNMENTS OF ERROR**

4

1) The trial court committed manifest error and was clearly wrong in its interpretation of the medical records and the medical expert testimony regarding causation of claimant's second metatarsal foot fracture, medical treatment and disability.

2) The trial court committed manifest error and was clearly wrong in finding that Dalton Landry "did not meet his burden of proof" that the second metatarsal foot fracture required continued medical treatment and rendered him disabled from his job.

3) The trial court committed manifest error and was clearly wrong in not finding that Furniture Center was arbitrary and capricious in its denial of this claim warranting the assessment of penalties and attorney fees for both the failure to pay indemnity benefits and medical benefits.

**STANDARD OF REVIEW**

In workers' compensation cases, the factual findings of the trial court are subject to the manifest error standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p.4 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530, pp.4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the standard, the appellate court must not determine whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Freeman*, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous. *Stobart*, 617 So.2d at 882. Therefore, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced

5

that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

**LAW AND ANALYSIS**

**Assignment of Error 1:**

In order for a claimant in a workers' compensation case to receive benefits for temporary total disability, he must prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment due to his injury. *Veazie v. Gilchrist Const. Co.*, 2004-118 (La. App. 3 Cir. 6/2/04) 878 So.2d 742. In order for a claimant to establish by clear and convincing evidence that he is unable to engage in any type of employment, he must introduce objective medical evidence. *Ratcliff v. Brice Bldg. Co.*, 03-624 (La. App. 5 Cir. 11/12/03) 861 So.2d 613. Workers' compensation laws are construed liberally in favor of the claimant. However, the claimant carries the burden of proving by a preponderance of the evidence that the injury caused his disability.

In this case, there is no dispute that Mr. Landry injured his foot while he was working at Furniture Center. Claimant argues that his foot fracture caused him to become disabled and eventually prevented him from working. The defendants, on the other hand, argue that the bone fracture in Mr. Landry's foot had healed properly, and it was the "myriad" of other health problems that lead to Mr. Landry's disability. At the time of the accident, Mr. Landry was a seventy-year-old man who suffered from obesity, diabetes mellitus, and venous insufficiency. The venous insufficiency caused swelling in both of his lower extremities, a condition described as "monster foot". Mr. Landry also suffered from a degenerative joint disease that caused chronic pain in his

6

left knee, and eventually required him to undergo knee replacement surgery in early October 2002.

In order to receive benefits for temporary total disability, Mr. Landry has to prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment due to his injury. Mr. Landry continued to work on the day of the accident and every day on his regular schedule for weeks after the accident. He claims that he had pain in his foot on some days, and, as a result, had to leave work early. Unfortunately, there is no record of the days or hours Mr. Landry worked at Furniture Center following his accident. However, neither the store manager nor the office manager remember him complaining of foot pain while working, nor do they remember him having to sit and rest more than usual following the accident. Not only did Mr. Landry continue to work as a furniture salesman for Furniture Center, when the liquidation company took over, he signed an employment contract with the company and worked as a furniture salesman for them for several weeks until the day before his pre-op appointment with Dr. Muldowny. Mr. Landry was clearly able to continue with his employment, as he continued to work regularly on a full-time basis for weeks after his accident.

Four orthopedic surgeons examined Mr. Landry's fracture and each was of the opinion that there was no evidence of any mal-union, non-union, or mal-alignment. Dr. Portubsky and Dr. Gidman agreed that Mr. Landry's fracture was at maximum medical improvement and that no further treatment was necessary. Both doctors also concluded that Mr. Landry was capable of returning to his job at Furniture Center. Dr. Muldowny, on the other hand, did not feel that Mr. Landry could return to his job based on Mr. Landry's complaints about his foot pain. However, Dr. Muldowny felt

that Mr. Landry's foot pain and swelling was most likely caused by the venous insufficiency, and not by the fracture. Mr. Landry also saw Dr. Hebert. Dr. Hebert tried to alleviate Mr. Landry's pain by using a bone growth stimulator. According to Mr. Landry, the bone growth stimulator did nothing to help the pain or the swelling subside. Dr. Hebert could never objectively determine whether any of Mr. Landry's foot pain was caused by the healed fracture. Accordingly, Dr. Hebert testified that if he had to guess whether the pain and swelling in Mr. Landry's foot was caused by the healed fracture or venous insufficiency, he would guess that the source of the pain and swelling was the venous insufficiency.

Mr. Landry had the burden of proving by clear and convincing evidence that he was disabled in order to be entitled to total temporary benefits. Mr. Landry had to prove that he was incapable of any type of employment or self-employment. He also carried the burden of proving by a preponderance of the evidence that it was the injury that disabled him. Here, a significant amount of medical evidence supports the conclusion that it was Mr. Landry's venous insufficiency that was the cause of the pain and the swelling in his foot, not the fracture. Therefore, applying the manifest error standard, we agree with the decision of the trial court, finding that the weight of the evidence supports its decision.

**Assignment of Error No. 2:**

Claimant argues that the trial court committed manifest error in finding that he did not meet his burden of proof that the second metatarsal foot fracture required continued medical treatment and rendered him disabled from his job of injury. In claimant's brief, he relies on the *Housely* presumption, derived from *Housely v. Cerise*, 579 So.2d 973 (La.1991). In *Housely*, the court determined:

8

A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

*Id*. at 980 (quoting *Lucas v. Ins. Co. of N. Am.*, 342 So.2d 591 (La.1977). Therefore, if a claimant establishes the elements enumerated in *Housely*, he is entitled to a presumption of causation. The *Housely* case speaks to the issue of causation. In this case, there is no question whether the accident that occurred on June 8, 2002 caused Mr. Landry to suffer a "non-displaced fracture of the mid right second metatarsal." However, the question in this case is whether the accident caused Mr. Landry to suffer a disability. The trial court opined that the accident did not, in fact, cause Mr. Landry to suffer a disability, and after examining the evidence, and applying the manifest error standard of review, we agree with the decision of the trial court. The standard espoused in *Housely* presumes a disability, and in our case, we have found that Mr. Landry was not disabled by his work-related injury. Therefore, in the instant case, *Housely* is irrelevant.

Accordingly, we find Mr. Landry was not entitled to a presumption of causation, and that the trial court did not commit manifest error in finding that Mr. Landry did not meet his burden of proof that the second metatarsal foot fracture required continued medical treatment and rendered him disabled from his job.

**Assignment of Error No. 3**

Claimant further argues that the trial court committed manifest error and was clearly wrong in not finding that Furniture Center was arbitrary and capricious in its

denial of this claim warranting the assessment of penalties and attorney fees for both the failure to pay indemnity benefits and medical benefits. Under La.R.S. 23:1201(F), a claimant in a workers' compensation claim has the burden of proving his entitlement to statutory penalties for the employer's refusal or failure to timely pay workers' compensation benefits. To avoid the imposition of penalties and attorney fees, the employer and its insurer must provide factual and medical evidence to reasonably controvert a workers' compensation claim. *Bolton v. Mike Fleming Construction*, 36,521 (La.App. 2 Cir. 12/11/02), 833 So.2d 1177. The employer must have an "articulable and objective reason to deny benefits at the time it took the action." *Authement v. Shappert Engineering*, 02-1631(La. 2/25/03), 840 So.2d 1181, 1188.

Under *Bolton*, penalties should be imposed only when there is no good faith or just cause on the part of the employer and his refusal to pay the benefits. A workers' compensation judge's decision to award attorney fees and penalties is subject to the manifest error standard of review. *Bolton,* 833 So.2d 1177.

It is evident that Furniture Center and its insurer had a valid reason and evidence to deny indemnity benefits to Mr. Landry. As we have already held, the weight of the medical evidence tends to prove that it was not the fracture, but rather venous insufficiency that was the cause of Mr. Landry's chronic pain and swelling. This medical evidence certainly gave Furniture Center and its insurer reason to deny indemnity benefits to Mr. Landry, as he was not disabled by his work-related injury. Therefore, we find that the trial court was not manifestly erroneous in finding that Furniture Center and its insurer were not arbitrary and capricious in their denial of this

claim and that the assessment of penalties and attorney fees for the failure to pay indemnity benefits was unwarranted.

Claimant also contends that the trial court was erroneous in finding that Furniture Center and its insurer, Louisiana Retailers Mutual Insurance Company, were arbitrary and capricious in their denial of payment of medical expenses incurred due to Mr. Landry's work related injury. Workers' compensation also serves to provide medical benefits to an employee who is injured within the course and scope of his employment. *Authement*, 840 So.2d at 1187. An employee's right to recover medical expenses is "separate and distinct" from his right to claim compensation. Thus, a claimant may not recover compensation, but may still recover medical expenses. *Baker v. Libbey Glass*, 32,748(La.App. 2 Cir. 5/10/00), 759 So.2d 1007, 1015; *Elliot v. OMSI*, 97-71 (La.App. 3 Cir. 4/30/97), 693 So.2d 847. Under the workers' compensation scheme, it is the duty of the employer, not the employee, to pay the medical benefits and expenses of the injured employee. *Id.* at 1188. The employer has a duty to "furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." La.R.S. 23:1203(A). The employer or the insurer must pay workers' compensation medical benefits within sixty days after receiving written notice of those expenses. Therefore, if an employer fails to pay medical expenses timely, penalties and attorney fees may be imposed under La.R.S. 23:1201(F).

In the instant case, Mrs. Landry faxed a copy of two bills for medical expenses, on behalf of her husband, to Ms. Shortess, an insurance adjuster for Louisiana Retailers Mutual Insurance Company, on October 25, 2002. The first bill attached to

11

the fax was a copy of a cash register receipt from Carmichael's Pharmacy. The receipt shows that one item, "DME," was bought for $19.95. To the left of the copy of the receipt, in Mrs. Landry's handwriting, it clearly says, "walking shoe." The second bill submitted by Mrs. Landry was from Hanger Prosthetics for the purchase of a USMC Cam Walker. Although Ms. Shortess received both of these bills from Mrs. Landry, the insurance company never paid either of the two bills. In her trial testimony, Ms. Shortess, stated that she could not pay the Carmichael's Pharmacy receipt because it was not itemized. The receipt clearly states that one item was purchased. This item was itemized as "DME," which is short for "durable medical equipment." While "DME" is quite broad, Mrs. Landry indicated on the faxed copy that the receipt was for a walking shoe; she also explained on the cover page of the fax that the first receipt attached was a bill for Mr. Landry's walking shoe. Ms. Shortess claimed that she needed "more clarification" in order to pay this medical expense. However, Ms. Shortess testified that she never asked for clarification and the insurance company never paid the twenty-one dollars and fifty-five cents to Mr. Landry.

Ms. Shortess testified that she and her insurance company could not pay the second bill submitted because it was a "cost estimate," and that they could not pay cost estimates. While the bill that Mrs. Landry submitted does say "COST ESTIMATE" across the top of it, a closer look reveals that this was, in fact, a bill from Hanger Prosthetics that included an estimate of how much of the total cost Mr. Landry's insurance would pay. The total amount of the bill for the Cam Walker was $643.00. It was estimated that Mr. Landry's insurance would pay $324.06 and that Mr. Landry

12

would have to pay $318.94 of the total amount. The bill clearly shows that Mr. Landry was charged for the amount of the USMC Cam Walker.

We must now determine whether the Furniture Center and its insurer were arbitrary and capricious in not paying the medical expenses submitted by Mr. Landry. As stated earlier, in determining whether to impose penalties and attorney fees on an employer, the court must look to whether the employer had an "articulable and objective reason" to deny the claimant benefits. *Authement*, 840 So.2d at 1188; *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So.2d 41, 46. The assessment of penalties and attorney fees in workers' compensation cases is "essentially a question of fact. Factual findings are subject to manifest error or clearly wrong standard of review." *Authement*, 840 So.2d at 1188-1189. We find that the record contains sufficient information to prove that both the walking shoe and the USMC Cam Walker were medical expenses incurred as a result of Mr. Landry's work-related injury for which his employer was liable. We also find that the bills submitted by Mr. Landry on October 25, 2002 were sufficient and should have been paid timely. If, in fact, there was insufficient information or any clarification needed by Ms. Shortess or the insurance company, it was incumbent upon them to request the requisite information or clarification. In both instances, we find that Ms. Shortess' explanations of the insurance company's denial of payment of Mr. Landry's medical expenses to be inadequate. These explanations do not amount to "articulable and objective reason[s] to deny benefits," and, therefore, we find that the imposition of penalties and attorney fees is appropriate. Accordingly, we reverse the trial court's ruling that Furniture Center and its insurer, Louisiana Retailers Mutual Insurance

13

Company, were not arbitrary and capricious in their denial of payment of medical expenses, and we award Mr. Landry $2,000 in penalties and $3,500 in attorney fees.

Additionally, we find that the trial court erroneously ordered the amount of $318.00 to be paid for the USMC Cam Walker. The bill from Hanger Prosthetics clearly states that the total cost of the Cam Walker is $643.00. Mr. Landry was only estimated to be responsible for $318.94, and his insurance was estimated to pay the remaining $324.06. Although Mr. Landry was expected to pay only $318.94, under workers' compensation, Furniture Center and its insurer are responsible for the entirety of the amount of the Cam Walker. Therefore, we reverse the trial court's ruling that the defendants pay $318.94 and order that they pay the entire amount for which they are responsible, $643.00.

**CONCLUSION**

The judgment of the trial court is affirmed in part and reversed in part. Costs of the appeal are assessed against the defendants/appellees.

**AFFIRMED IN PART, REVERSED IN PART.**