900 So.2d 146 (2005)
Chad CARLOS and Angela H. Carlos
v.
CNA INSURANCE COMPANY, Bryan M. Soulie and River Region Rehab, L.L.C.
No. 04-CA-1264.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 2005.
Jerald P. Block, Block Law Firm, Thibodaux, Louisiana, for Plaintiffs/Appellants, Chad Carlos and Angela H. Carlos.
Ambrose K. Ramsey, III, Law Offices of Sheryl Story, Metairie, Louisiana, for Defendants/Appellees, Bryan Soulie, River Region Rehab, L.L.C., and American Casualty Company of Reading, PA.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
This is a medical malpractice case against a physical therapist, his employer, and their insurer. The plaintiffs appeal a summary judgment dismissing their claims. We affirm.
On August 16, 2002, Chad Carlos and Angela Carlos filed a petition for damages against Bryan Soulie, River Region Rehab, *147 L.L.C., and CNA Insurance Company,[1] which alleges that Chad Carlos, while undergoing a regimen of physical therapy following back surgery, was re-injured while performing exercise under the supervision of physical therapist Bryan Soulie, as a result of Soulie's negligence in allowing Chad Carlos to lift weights that were too heavy.
Chad Carlos was injured in an on-the-job accident on February 9, 2001. As a result of his injury, he underwent lumbar surgery by Dr. Alexis Waguespack on two occasions, May 7, 2001 and November 7, 2001. Following the second surgery, Chad Carlos was recovering rapidly and Dr. Waguespack prescribed physical therapy. Approximately three weeks after the November 2001 surgery, Chad Carlos began attending physical therapy treatments with defendant Bryan M. Soulie, which continued thereafter as prescribed by Dr. Waguespack.
On January 18, 2002, Chad Carlos was receiving physical therapy from Bryan Soulie at River Region Rehab, L.L.C., in Luling, Louisiana. According to the petition, on that occasion Soulie informed Chad Carlos that, since he was at the end of his physical therapy treatments and ready to be released to work activity, Carlos should perform leg squats with weight. Carlos was then required to perform exercises with approximately 100 pounds. After making two attempts at the squat exercise, the petition alleges, Chad Carlos "began to experience an immediate headache as well as pain in his back and legs." He complained to Soulie and was told to lie down to rest.
According to the petition, Dr. Waguespack subsequently informed Chad Carlos that his weight-lifting limitations should have been in the range of 20 pounds. The petition alleged that Chad Carlos has not been able to work and has been told by his doctor that an additional surgery will be required in an attempt to resolve his back pain and injury.[2] The petition asserted that as a result of the incident, he sustained serious and permanent disabling injuries, which have not resolved and which he believes to be permanent.
Finally, the petition alleged that Bryan Soulie and River Region Rehab, L.L.C., are liable for the following:
1. failing to recognize the hazard/danger of prescribing physical therapy exercises requiring lifting weights of approximately 100 pounds;
2. failing to properly monitor and evaluate the prescribed physical therapy exercises;
3. failing to perform the proper procedures in advising and assisting with the physical therapy exercises;
4. failing to follow normal and customary lifting restrictions for a person who has endured two lumbar surgeries; and
5. failing to meet the standard of care required in the given situation.
Plaintiff Angela Carlos, wife of Chad Carlos, sought recovery for loss of consortium.
*148 The defendants filed a Motion for Summary Judgment on the ground that the plaintiffs would be unable to prove any breach of the applicable standard of care because they had no expert testimony to establish such a breach, nor evidence to prove causation regardless of standard of care.[3]
In opposition to the motion for summary judgment, the plaintiffs asserted there were genuine issues of material fact that precluded summary judgment. They argued that breach of the standard of care was established by defendant Soulie's deposition testimony. The plaintiffs relied on testimony of defendant Soulie in response to a hypothetical question posed by plaintiffs' counsel, as follows:
Q. Okay. And you would agree that if he was using that Smith lift and it was 100 pounds or more, then you would agree, would you not, that there was a breach in the standard of care if that was being done pursuant to your supervision and control?
A. Again, I don't know if it was a breach in the standard of care, but it was not what I had prescribed. So it was contrary to what I prescribed for Chad for that particular lift if that answers it for you.
[Deposition of Bryan M. Soulie, p. 138]
The plaintiffs contend this is an admission by Soulie to a potential breach in the standard of care with respect to the amount of weight Chad Carlos was lifting at the time of his injury.
Based on that response as well as other statements in Soulie's deposition, the plaintiffs argue the only remaining question is whether the breach in the standard of care caused a re-injury to Chad Carlos. In support of their argument they rely on the deposition testimony of Chad Carlos, Bryan Soulie, and Randall Barr (another physical therapist who treated Chad Carlos).
The trial court granted the motion for summary judgment, with the following written reasons for judgment:
All things considered, the Court has to agree with defendants that plaintiff cannot prove the requisite causation between the alleged acts of the physical therapist and the injuries alleged by plaintiff, Chad Carlos.
The only proof adduced relating to causation was the deposition testimony of Dr. Alexis Waguespack. Said doctor had performed two surgeries on Mr. Carlos' back prior to treatment by the physical therapist herein, Mr. Bryan Soulie. Dr. Waguespack opined that in 90% of back surgery cases, a subsequent fusion is not necessary. However, her opinion was that Mr. Carlos just happened to fall in that 10% of patients who do require a subsequent surgery (a fusion). Dr. Waguespack failed to see any causation whatsoever between Mr. Carlos' need for a subsequent fusion and the physical therapy provided by Mr. Soulie. She was adamant that there was no connection whatsoever. (In fact, she pointed out that an MRI showed no new injury or herniation subsequent to treatment *149 by Mr. Soulie prior to the fusion surgery. The MRI revealed only conditions that she'd expect to find whenever a subsequent fusion is required.)
The Court prides itself on giving plaintiffs their day in court. However, whenever proof essential to a case is lacking and there is no genuine issue of material fact, it has no recourse but to acknowledge same and rule accordingly.
The Court finds there is no genuine issue of material fact as to the element of causation, and will grant defendants' Motion for Summary Judgment.
On appeal, the plaintiffs assert the trial court erroneously granted the motion for summary judgment on the issue of causation. They contend the trial court erred in failing to apply the presumption of causation outlined in Housley v. Cerise, 579 So.2d 973 (La.1991), and in failing to find that the deposition exhibits attached to the motion for summary judgment and the opposition thereto presented a genuine issue of material fact regarding causation.
The Housley presumption to which the plaintiffs refer is as follows: A claimant's disability is presumed to have resulted from an accident if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appeared and continuously manifested themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Housley, 579 So.2d at 980, quoting from Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977).
The plaintiffs assert that although Chad Carlos had undergone two lumbar surgeries, he was substantially recovered after his second surgery and was almost ready to return to his work as an electrician. However, the plaintiffs contend, on January 18, 2002, his back was injured while performing a physical therapy lift with too much weight. At that time he had two more physical therapy sessions remaining and intended to return to work.
The plaintiffs argue that the trial court erred in failing to address the Housley presumption because, coupling the Housley presumption with the facts in this case, Chad Carlos will be able to establish causation satisfactorily on the basis that, although he was recovering from back surgery, he was in good health until the physical therapy accident on January 18, 2002, when the symptoms of the disabling condition appeared and continuously manifested themselves afterwards.
The plaintiffs assert those facts show a reasonable possibility of causal connection. They contend that lifting too much weight in physical therapy was a substantial factor in bringing about Chad Carlos' harm.
However, the plaintiffs ignore the deposition testimony of Dr. Alexis Waguespack, who was Chad Carlos' treating physician. Dr. Waguespack repeatedly stated that there is no connection between the physical therapy incident and the plaintiff's subsequent problems and surgery. The following statements are taken from the deposition of Dr. Alexis Waguespack:
A. I don't think that therapy is related to this. I think this is a natural history of this disease.
Q. What do you mean by that?
A. Well, he has two bad discs....I would say 10% of the population that undergo diskectomies will end up having to have a fusion. He fell into that 10%.... [pp. 14-15]
Q. Did you ever tell Mr. Carlos that you thought somebody had done something wrong in the physical therapy?

*150 A. No, I never did....I don't think it is related, I don't think the therapy at all is related .... [pp. 15]
I remember as I said I don't think the therapy at all had anything to do with it.... [p. 16]
* * *
Q. Did you believe that he was being honest about the fact that he had been hurt at physical therapy?
A. He was not hurt at physical therapy.... He had a progressive development of continuation of his disease.
Even if he did not go to physical therapy he would still have come into my office complaining of progressive back and leg pain because of development of scars that he was developing in his back, which he started, or was starting to develop again with the leg complaint that he has continued even though he has a fusion. He did not have acute injury at physical therapy.
Q. You know that?
A. Yes. I told you that when we had a meeting in the past. I did not believe that the therapy is related to him having to undergo a fusion. I think this is a progression of his problem. [p. 32-33]
Dr. Waguespack also discussed an MRI study of Chad Carlos' back taken on March 22, 2002  after the alleged physical therapy incident. She stated the MRI did not reveal any evidence of a recurrent disc at L4-5, although there was some evidence of subluxation of the facet joint, resulting in impingement upon the superior facet. The doctor testified that this was simply a common scenario following discectomies, called "post-laminectomy syndrome," which she said indicated the patient was going to need a fusion.
Unlike cases in which medical evidence is incomplete or unclear, in this case there is no medical evidence providing any possibility of a causal connection between the alleged incident and the alleged subsequent injury. Dr. Waguespack is the plaintiff's own surgeon and treating physician, who performed three surgeries on his back. She noted at the time of the second surgery that the plaintiff had developed excessive scar tissue and at the time of the third surgery she noted he had developed "exuberant" scar tissue.
Considering the testimony of Dr. Waguespack in this case, we agree with the trial court that the plaintiffs have failed to show that they will be able to prove a causal connection between the acts of the physical therapist and Chad Carlos' alleged injuries. The plaintiffs have failed to show there are genuine issues of material fact that would preclude summary judgment.
We note that, although this is a medical malpractice suit, none of the parties mentions a medical review panel. We are unable to determine whether the Medical Malpractice Act applies in this case because we cannot determine whether the defendants were qualified for the status of health care providers under the act. If not, it is unclear whether the burden of proof set forth in La.R.S. 40:1299.41 would apply.[4] A health care provider who fails to *151 qualify under the Medical Malpractice Act is not covered by its provisions and is subject to liability under the law without regard to the Act's provisions, except for the provisions with respect to the suspension and running of prescription of actions. La.R.S. 40:1299.41(D).
In this case, however, it is immaterial what standard of care must be proven, because the defense offered unopposed medical evidence that the alleged acts of defendant Bryan Soulie were not the cause of the problems for which the plaintiff subsequently had to undergo the additional surgery.
For the foregoing reasons, the judgment is affirmed. The costs of this appeal are assessed against the plaintiffs-appellants.
AFFIRMED.
NOTES
[1] CNA was erroneously named as insurer of Soulie and River Region Rehab, L.L.C. However, the correct name of their insurer is American Casualty Company of Reading, PA. American Casualty filed an answer to the petition on behalf of itself and its insureds, in which it advised the district court of the erroneous designation.
[2] According to other information in the record, Chad Carlos underwent a third surgery on August 28, 2002, which was a fusion, a more extensive procedure than his previous surgeries.
[3] Specifically, the defendants referred to Craig Pate and Craig Hebert, two physical therapists on the plaintiffs' list of witnesses for trial. After the defense made several unsuccessful attempts to depose Pate and Hebert, plaintiffs' counsel advised defense counsel that Pate and Hebert would not be called to testify. Subsequently, plaintiffs' counsel changed his mind and informed defense counsel he would call Pate and Hebert. As a result, the defense filed a motion to strike the two witnesses. The court minutes show that the motion to strike was found moot, from which we infer that plaintiffs' counsel decided to omit the witnesses.
[4] La.R.S. 40:1299.41(A)(1) includes physical therapists in the definition of "health care providers" who may be entitled to the limitation of liability provided by the Act. La.R.S. 40:1299.41(A)(7) sets out the standard of care as follows:

"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider ... in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.