CHARLES R. JONES, Judge.
 

 LThe Appellants, M. Langenstein
 
 &
 
 Sons, Inc. (Langenstein’s), appeal a judgment of the Office of Workers’ Compensation, District 8, State of Louisiana, the Honorable Diane Lundeen, who granted to complainant, Jerry LaFleur, an award for workers’ compensation benefits. Complainant answered the appeal, seeking attorney’s fees. We affirm, and deny the answer to this appeal.
 

 Ms. Jerry LaFleur was employed by defendant Langenstein’s on November 21, 2005, as an assistant produce buyer. Pursuant to Ms. LaFleur’s employment, Mr. Mike Lanaux, general manager and co-owner of Langenstein’s, conducted a telephone interview regarding prospective employment with Ms. LaFleur while she was still living in Florida. During this interview, Ms. LaFleur stated she was in good health and failed to disclose any prior injuries or physical impairments to Mr. La-naux. Ms. LaFleur also informed Mr.
 
 *1180
 
 Mike Lanaux that lifting objects on the job would not present a problem in terms of her fulfilling the job requirements at Lan-genstein’s.
 

 The instant claim arose out of an accident that occurred on September 5, 2006, during the course and scope of Ms. La-Fleur’s employment. On this date, Ms. LaFleur, while in the process of restocking produce at the end of the work day, felt | .¿a pain in her neck which seemed as though she had pulled a muscle. While reaching for a crate of melons Ms. LaFleur figured she had just pulled a muscle and disregarded the pain. Ms. LaFleur continued to work until September 11, 2006, at which time she reported the incident to her supervisor, Mr. Lanaux. There had been almost a week in between the date of this incident and the date she reported the accident to her employer. At trial, Ms. LaFleur testified that she failed to disclose the pain to her employer on September 5th because she hoped the pain would subside. However, she noted that she reported when it would not subside and worsened. After reporting the incident, she was referred to visit Dr. Lee Moss at the Southern Orthopedic Specialists to receive treatment for the injury. Dr. Moss eventually referred Ms. LaFleur for surgery by Dr. Corales, a neurosurgeon. However, the surgery was eventually denied because Langenstein’s terminated Ms. LaFleur’s workers’ compensation benefits.
 

 As a requirement of Ms. LaFleur’s workers’ compensation claim, she was required to fill out a Second Injury Fund Questionnaire. This questionnaire inquired about a person’s prior medical history and previous disabling injuries. Ms. LaFleur answered in the negative to each question concerning her having had prior injuries, with the exception of diabetes. Langenstein’s obtained medical records of Ms. LaFleur from healthcare providers in Florida, since she previously resided there and she had provided appellant with the authority to retrieve all her past medical records. The records indicated a history of fibromyalgia and headaches and a past cervical MRI obtained on Ms. LaFleur. The results of the cervical MRI indicated right side headaches and head injury, presumably, an injury from a prior fall at her former employment, Eve’s Market.
 

 | ..In an effort to further investigate Ms. LaFleur’s workers’ compensation claim, Mr. Phil Moory, another employee of Lan-genstein’s, obtained a recorded statement from Ms. LaFleur in an effort to clarify Ms. LaFleur’s treatment. Mr. Moory stated that this recorded statement was necessary because Ms. LaFleur’s previous medical records were in direct conflict with information she had provided to her physicians in Louisiana, statements made to Mr. Lanaux at the time of hire, the report of past medical issues to the initial uptake adjuster, and also on the second injury fund questionnaire.
 

 During the recorded statement, Ms. La-Fleur repeated the exact same answers she had provided on all the previous questionnaires. Upon completion of the recorded statement, Mr. Moory opined that Ms. LaFleur was making statements that were false and in direct contradiction to evidence in the possession of the adjuster. At trial, Mr. Moory testified that Ms. La-Fleur misled him and he stated that he terminated Ms. LaFleur’s workers’ compensation benefits in its entirety because, as he testified, that in addition to making false statements to him, Ms. LaFleur also misrepresented her medical conditions to Langensteins. Mr. Moory testified that Ms. LaFleur had informed Mr. Lanaux that she had no physical problems and that she was in good health. Furthermore, when faced with the second injury fund
 
 *1181
 
 questionnaire, Ms. LaFleur did not complete it accurately.
 

 As a result of the termination of benefits, Ms. LaFleur filed suit against Lan-genstein’s for worker’s compensation benefits. Trial was held on this matter over three days, May 22, 2008, May 27, 2008, and again on May 30, 2008, before the honorable Dianne Lundeen of District 08, Office of Workers’ Compensation. A written judgment was prepared and signed by the court on October 23, 2008. The judgment determined that Ms. LaFleur was injured on September 5, 2006, by an |4accident in the course and scope of her employment. Judge Lundeen ordered that Langenstein’s must pay for and authorize the surgery recommended by Dr. Corales, and awarded Ms. LaFleur ongoing medical care that is necessary and related to her work-related accident. Additionally, Ms. LaFleur was entitled to supplemental earning benefits at a zero earning capacity beginning March 9, 2007 through May 30, 2008. Finally, Judge Lundeen determined that Ms. LaFleur did not violate La. R.S. 23:1208 or La. R.S. 23:1208.1. Langenstein’s subsequently filed this timely appeal.
 

 In the instant matter Langenstein’s raises three assignments of error:
 

 1) The workers’ compensation judge committed manifest error in finding that Jerry LaFleur did not violate Louisiana Revised Statute 23:1208.1
 

 2) The workers’ compensation judge committed manifest error in finding that Jerry LaFleur did not violate Louisiana Revised Statute 23:1208.
 

 3) The workers’ compensation judge committed manifest error in finding that Jerry LaFleur met the burden of proof regarding the occurrence of an accident.
 

 Ms. LaFleur answered the appeal, seeking from this court an award of attorney fees in the trial court presentation, and additional attorney fees for work on the appeal.
 

 An appellate court cannot set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong” based on evidence without evidentiary support.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989). Thus, the issue is not whether the trier of fact is right or wrong, but rather whether the fact finder’s conclusion is a reasonable one.
 
 Id.
 
 In
 
 Mart v. Hill,
 
 505 So.2d 1120, 1127 (La.1987), the Supreme Court set out a two part test for the reversal of fact finder’s determinations:
 

 1„1) The appellate court must find for the record that a reasonable factual basis does not exist for the finding of the trial court.
 

 2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous.)
 

 In Langenstein’s first and second assignments of error, Langenstein’s argues that the trial court committed manifest error in finding that Ms. LaFleur did not violate Louisiana Revised Statute 23:1208.1, forfeiture of benefits. Louisiana Revised Statute 23:1208.1 states in pertinent part:
 

 Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employer shall answer truthfully; failure to answer truthfully shall result in the employee’s forfeiture; failure to answer truthfully shall result in the employee’s forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer’s ability to receive reimbursement from the second injury fund.
 

 
 *1182
 
 In order for this section to apply, the party seeking relief must prove three things: 1) there must be an untruthful statement; 2) prejudice to the employer; and 3) compliance with notice requirement of the statute. All three of these elements must be met in order for the statute to be applied.
 

 In examining section 1208.1, we must first examine whether there was an untruthful statement made by the plaintiff to the employer, Langenstein’s. Although Langenstein’s continuously inquired of Ms. LaFleur about her previous medical history, she did not make any misleading or untruthful statements. While she did not disclose her previous medical history and past injuries which she had incurred at her past employment, Ms. LaFleur did disclose her diabetes, the sickness which she was suffering with and had incurred at the time before her | ^employment. During the pre-employment telephone interview with Mr. Lanaux, Ms. LaFleur testified that she was not suffering from any disabling illness or injuries. Even Mr. Lanaux testified at trial that until the said injury at Langenstein’s, Ms. LaFleur had never complained of any pains or injuries. Ms. LaFleur performed her job exceptionally and in turn, received a raise from Langen-stein’s authorized by Mr. Lanaux. At the time Ms. LaFleur received the raise, she had been employed at Langenstein’s for nine (9) months
 

 Further, while filling out the second injury fund questionnaire provided by Lan-genstein’s, Ms. LaFleur provided and checked all relevant sicknesses she had at the time listed on the questionnaire. She checked diabetes because it was on the list. She did not check the fibromyalgia which she had for many years because it was not requested on the list. Also, Ms. LaFleur did not state her past injuries to her knee and back on the questionnaire because according to her, these injuries were not disabling injuries. These past injuries were not a constant reminder nor thought of by her because they happened years ago, and since receiving treatment, she barely remembered them. When asked at trial why she failed to state these past injuries to the manager, on the questionnaire, to Mr. Moss, and to Mr. Moory, Ms. LaFleur stated that she had forgotten all about them and could not remember which knee she had injured.
 

 In its reason for judgement, the trial court stated:
 

 Defendant argued that Ms. LaFleur violated Louisiana Revised Statute 28:1208.1 because she did not disclose a ten year old knee injury, hypertension or disability on the second injury fund questionnaire. However, as is noted in Ms. LaFleur’s claim, she injured her neck in the subject accident and filed a claim based on the need for medical care related to her neck, not her knee or her hypertension. Ms. LaFleur testified credibly that she had forgotten about the old knee injury which had fully resolved and |7which had no bearing to any of the body parts she hurt in this accident. Further, there was no evidence that Ms. LaFleur had any ‘impairment” that precluded her from engaging in gainful employment at a heavy duty level prior to the subject accident. When Ms. LaFleur’s filled out the second injury fund questionnaire, her understanding was that physical impairment or disability meant a condition that interfered with or precluded one from working. This is reasonable evidence and testimony of Ms. LaFleur’s work history from both her former long term employer and defendant. Defendant substantiated that Ms. LaFleur did not demonstrate any form of inability to work at any capacity prior to the subject accident
 
 *1183
 
 and that Ms. LaFleur worked without limitations or complaints.
 

 Ms. LaFleur testified in court that she filled out the second injury fund questionnaire as truthful and honestly as she could ... Most importantly, she did not acknowledge a prior neck injury because she never had a neck injury. Mr. Moo-ry incorrectly assumed that because a prior cervical MRI was performed on Ms. LaFleur in 2002, that a) Ms. La-Fleur suffered a prior neck injury, b) she was disabled and not as employable; and c) the employer/insurer would have recovered from the fund. The clinical history from the cervical MRI test results indicates right side headaches and head injury, presumably, the result of a prior fall at her previous place of employment. There was no evidence that this diagnostic test was ordered as a result of a neck injury suffered by Ms. LaFleur.
 

 Thus, as the trial court found, Ms. LaFleur did not provide Langenstein’s with untruthful statements. Ms. LaFleur did not intentionally try to conceal information about her past treatments and injuries from defendant for the sole purpose of obtaining workers’ compensation. She did not disclose the information about her past knee injury and fibromyalgia because she thought it did not relate to the injury which she suffered during the course and scope of her employment at Langenstein’s.
 

 In
 
 King v. Grand Cove Nursing Home,
 
 93-779 (La.App. 3 Cir. 3/9/94) 640 So.2d 348, cert. denied, 641 So.2d 204 (La.1994), the Third Circuit refused to enforce the forfeiture provisions of section 1208.1 when a nurse’s aide injured her back while lifting a resident. Although she had suffered prior cervical and back strain prior to her work-related accident and failed to note these when asked on the forms provided by her employer if she had any trouble with her back, the Court found that the history of her prior back strains did not “directly” relate to the medical condition which was the subject of the workers’ compensation claim.
 

 Langenstein’s discontinued Ms. La-Fleur’s workers’ compensation benefits on the basis that she did not disclose a prior knee injury she suffered in 1996 for which she received treatment. Langenstein’s also states that it terminated Ms. La-Fleur’s benefits when it recovered her medical records which revealed a cervical MRI she had about a year prior to the accident. However, there is no evidence in the medical records or the trial court record indicating that the MRI was for a neck injury as Langenstein’s asserts. Our review of the record indicates that the MRI was ordered because of headaches and stress headaches resulting from the fibro-myalgia. The fibromyalgia which Ms. La-Fleur had, manifested itself in the form of somatic pain throughout her body and not a specific body part. Thus, considering all the evidence provided, we agree with the trial court that Ms. LaFleur did not make any untruthful statements to Langen-stein’s.
 

 In
 
 Lebert v. McNeese State University,
 
 2005-856 (La.App. 3 Cir. 2/1/06), 932 So.2d 678, 685, the court found that an alleged false testimony to physician of choice did not warrant a finding of fraud where the employee’s recollection was not relevant to the determination of his benefits. In the matter
 
 sub judice,
 
 the trial court found Ms. LaFleur to be credible when she stated that she did not disclose |3her past injuries because she merely forgot about them. This finding of fact is not manifestly in error nor clearly wrong.
 

 The second element of La. R.S. 23:1208.1 is to prove prejudice to the employer by the employee:
 

 
 *1184
 
 Statements that prejudice the employer are those untruthful answers that directly relate to the medical condition for which a claim for benefits is made or affects the employer’s ability to receive reimbursement from the second injury fund.
 

 In
 
 Wise v. J.E. Merit Constructors, Inc.,
 
 97-C-0684 (La.1/21/1998), 707 So.2d 1214, the Supreme Court determined that “a direct relation is established when the subsequent injury was inevitable or very likely to occur because of the presence of the preexisting condition.”
 
 Id.,
 
 707 So.2d at 1220. The record indicates that though there was a cervical MRI taken of Ms. LaFleur, it is not evident that it was taken because of a neck injury. The trial court specifically found Ms. LaFleur to be a credible witness regarding the clinical indication of headaches as an explanation for the ordering of a cervical MRI. None of Ms. LaFleur’s prior injuries relate to the injury which Ms. LaFleur suffered during the course and scope of her employment. Langenstein’s alleges that Ms. LaFleur is claiming to have incurred an accident at work which will result in a surgery to her neck, specifically a fusion at C-6. Langen-stein’s also asserts that this is the same disc that has been protruding for quite some time. Thus, it would follow that further injury to Ms. LaFleur’s neck was “inevitable and very likely to occur” because of the pre-existing herniation.
 

 Langenstein’s allegations are without merit because while the Florida medical records indicated a cervical MRI performed on Ms. LaFleur, there is no evidence that it was for a neck injury, specifically to the C-6 fusion of Ms. |inLaFleur’s neck. None of Ms. LaFleur’s prior injuries relate to the present injury for which she seeks workers’ compensation benefits. Therefore, the trial coui't did not err in finding that defendant failed to prove this second element and providing that plaintiffs actions were to prejudice the defendant. Hence, we find that this assignment of error has no merit.
 

 The third element of section 1208.1 is that the written compliance with the notice requirement of the statute must be complied with La. R.S. 23:1208.1. The written medical form concerning previous medical conditions contain a notice advising an employee of the forfeiture of benefits if one fails to answer truthfully. “Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.”
 
 Id,.
 
 Langenstein’s asserts that the second injury fund questionnaire met these requirements because a warning notice was labeled at the bottom of the second injury fund questionnaire which was provided to Ms. LaFleur. The trial court found that when Ms. LaFleur filled out the second injury fund questionnaire, she reasonably interpreted the language on the form relating to a physical impairment or disability to mean a condition that would impair or preclude her from presently working. Ms. LaFleur did not state her past injuries on the questionnaire because, she thought, the questionnaire inquired about disabling injuries. According to Ms. LaFleur, none of her past injuries could be considered disabling or life altering; importantly, they did not prevent her from continuing employment, so she did not report them. The trial court accepted this explanation as truthful and found her credible. Our review of the record indicates this factual determination is not manifestly in error, nor clearly wrong. Therefore, we find that Langenstein’s has failed to prove a violation of truthfulness in relation to the lustatute. The trial court’s determination that Ms. LaFleur failed to violate La. R.S 23:1208.1 was not manifestly erroneous, nor clearly wrong.
 

 
 *1185
 
 Langenstein’s third assignment of error is that the workers’ compensation court erred and committed manifest error in finding that Ms. LaFleur met the burden of proof regarding the occurrence of an accident. La. R.S. 23:1031 states that, as a threshold requirement, a worker in a compensation action must establish “personal injury by accident arising out of and in the course and scope of his employment.” The Louisiana Supreme Court in
 
 Lucas v. Insurance Company of North America,
 
 342 So.2d 591 (La.1977) stated the principle of presumption as to causal connection between accident and injury as follows:
 

 A claimant’s disability is presumed to have resulted from an accident the injured was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves after-wards, providing that the medical evidence shows thei’e to be a reasonable possibility of causal connection between the accident and the disabling condition.
 
 Id.
 
 342 So.2d at 596.
 

 The trial court in its reasons for judgment focused on the credibility of the claimant. The court stated “in determining whether a worker has shown by a preponderance of the evidence that an injury causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant’s testimony is accorded great weight.” Citing
 
 Jackson v. Quikrete Products, Inc.
 
 816 So.2d 338, (La.App. 4 Cir.2002). In this present case, the claimant’s accident occurred while she was alone in a produce cooler at defendant’s employment. She testified that she was in the cooler alone and defendant’s store manager, Mr. La-naux also testified that it was not uncommon for | ^employees to be alone in the cooler, especially while carrying produce. Moreover, the trial court found that Ms. LaFleur had a work injury on September 5, 2006, and noted that the store manager testified that he had no reason to believe that the accident did not happen as Ms. LaFleur stated. Although she did not report the accident on that exact date because she thought she had just pulled a muscle, she reported the injury when the pain persisted and worsened. Her failure to report the injury on September 5, 2006, but rather almost a week later, does not support the conclusion that an injury did not occur during the course and scope of her employment.
 

 Furthermore, because defendant’s manager found Ms. LaFleur to be very credible and truthful, he referred her to his family physician for treatment. While Ms. LaFleur had some pre-existing medical conditions, as well as diabetes prior to the subject accident, none of her pre-existing medical conditions related to or was a causal connection to the area of the body which was injured during her employment. Ms. LaFleur’s neck injury for which she seeks treatment and benefits resulted from an accident at work. Because she was in good health prior to the accident, but commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested itself afterwards. Ms. LaFleur’s pain continued, and even though Dr. Moss ordered her to sustain from work for several weeks, the pain did not subside. Dr. Moss, due to Ms. La-Fleur’s ongoing pain presentation and herniated discs, referred her to Dr. Richard Corrales, a neurosurgeon, who later recommended Ms. LaFleur for surgery-an anterior discectomy and fusions at C5-6. All of Ms. LaFleur’s medical records, both past and present, indicates that there is a reasonable possibility of a causal connection between the accident which occurred while Ms. LaFleur was in the cooler at work, | [Sand the disabling condition. This
 
 *1186
 
 assignment of error is without merit and the workers’ compensation court did not commit manifest error, nor was it clearly wrong in concluding that Ms. LaFleur suffered an accident during the course and scope of her employment.
 

 Finally, in Ms. LaFleur’s answer to the appeal, she requests an award of attorney fees for having prevailed in the trial court, and additional attorney fees for work on the appeal. The trial court did not award attorney’s fees. The failure to award attorney fees is a factual determination by the trial court. And our review of the record indicates that this factual determination was not manifest error nor clearly wrong. Further, “an increase in attorney fees should be awarded to a party who has already been awarded attorney’s fees by the trial court and then successfully defends on appeal.”
 
 Saacks v. Mohawk Carpet Corporation,
 
 2003-0386 (La.App. 4 Cir. 09/03/03), 855 So.2d 359. In this instance, Ms. LaFleur cannot be award additional attorney fees since there were no attorney fees awarded in the trial court.
 

 DECREE
 

 For the foregoing reasons, the judgement of the office of workers’ compensation ordering M. Langenstein & Sons, Inc., to pay for the authorized surgery recommended by Dr. Corrales; and that the claimant is entitled to ongoing medical care that is necessary and related to the subject accident; and that Ms. LaFleur is entitled to supplemental earning benefits at a zero earning capacity beginning March 9, 2007 through May 30, 2008; and finally, determining that Ms. LaFleur did not violate La. R.S. 23:1208 or La. R.S. 23:1208 is
 
 affirmed.
 

 AFFIRMED.