PETTIGREW, J.
Un this case, several parish assessors seek review of a November 29, 2010 judgment from the 19th Judicial District Court that granted plaintiffs’ no right of action exception, dismissing the assessors’ cross-claims and reconventional demands. For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
The parties are no strangers to this case, which now extends over multiple jurisdictions. In fact, the history of this case dates back to December 2000, when we issued a ruling concerning ANR Pipeline Company’s (“ANR”) challenge of the ad valorem taxes assessed against its public service pipelines. ANR Pipeline Co. v. Louisiana Tax Com’n, 2000-2251 (La.App. 1 Cir. 12/22/00), 774 So.2d 1261, writ denied, 2001-0250 (La.4/20/01), 790 So.2d 633. There have been numerous other appeals and writ applications in this matter since that date, including the judgments previously rendered by this court in ANR Pipeline Co. v. Louisiana Tax Com’n, 2005-1142 (La.App. 1 Cir. 9/7/05), 923 So.2d 81, writ denied, 2005-2372 (La.3/17/06), 925 So.2d 547, cert. denied, 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38 (2006) (“ANR VI”); ANR Pipeline Co. v. Louisiana Tax Com’n, 2008-1148 (La.App. 1 Cir. 10/17/08), 997 So.2d 92, writ denied, 2009-0027 (La.3/6/09), 3 So.3d 484 (“ANR VII ”); and ANR Pipeline Co. v. Louisiana Tax Com’n, 2007-2282 (La.App. 1 Cir. 10/17/08), 997 So.2d 105, writ denied, 2009-0025 (La.3/6/09), 3 So.3d 484 (“ANR VIII ”). While the underlying facts of this case are well known to both this court and the parties herein, a brief review of the procedural history that has brought us to this point is necessary for a complete understanding of the court’s analysis that follows.
Plaintiffs, ANR, Tennessee Gas Pipeline Company, and Southern Natural Gas Company, provide natural gas transportation, storage, and balancing services in Louisiana and in interstate commerce, and are regulated by the Federal Energy Regulatory Commission pursuant to the Natural Gas Act, 15 U.S.C. § 717, et seq. Plaintiffs each own interstate natural gas transmission pipelines in Louisiana, which | ^properties are classified and taxed as public service properties under the Louisiana tax scheme. La. R.S. 47:1851(K) and (M).[2]
*524 Under the Louisiana Constitution, property is classified and different rates or ratios of fair market value are assigned to those classifications for ad valorem tax purposes. See La. Const, art. VII, § 18(B). The assessed value of “public service properties,” excluding land, is twenty-five percent (25%) of the fair market value, while the assessed value of “other property” is fifteen percent (15%) of the fair market value. The assessor determines the fair market value of all property subject to taxation within his respective parish or district, except for public service properties, which are appraised at fair market value and are assessed by the Louisiana Tax Commission (the “Commission”) or its successor. La. Const, art. VII, § 18(D). ANR VI, 2005-1142 at 8-9, 923 So.2d at 85. The assessment of public service property by the Commission is governed by the procedures set forth in La. R.S. 47:1851-1857.
During the tax years at issue, a number of intrastate natural gas, oil, and other liquid pipeline companies were regulated by the Louisiana Public Service Commission as provided in La. R.S. 30:551(A) and qualified as public service companies under La. R.S. 47:1851(K). The pipelines of these companies, however, were assessed by local assessors at fifteen percent (15%) of fair market value, while the public service properties of plaintiffs were assessed at twenty-five percent (25%) of fair market value. ANR VII, 2008-1148 at 7, 997 So.2d at 96.
|4For each tax year in question, plaintiffs paid their ad valorem taxes under protest. Specifically, plaintiffs challenged that portion of taxes assessed in excess of fifteen percent (15%) of fair market value. Plaintiffs then filed individual suits against the
Commission for declaratory judgment and for refunds of the taxes paid under protest. Plaintiffs argued that the assessed values of their properties were calculated at twenty-five percent (25%) of fair market value, while the assessed values of other pipeline public service taxpayers that fall within the statutory definition of pipeline companies were calculated at fifteen percent (15%) of fair market value. Plaintiffs asserted that this disparate treatment violated the uniformity requirement of the Louisiana Constitution, the equal protection and due process clauses of the Louisiana and United States Constitutions, and the commerce clause of the United States Constitution. Plaintiffs also alleged that La. R.S. 47:1851(K) is unconstitutional. These suits were consolidated for trial. ANR VII, 2008-1148 at 7-8, 997 So.2d at 96.
Following a bench trial before the 19th Judicial District Court (Judge Timothy E. Kelley) in early 2005, Judge Kelley rendered declaratory judgment in favor of the plaintiffs, finding that the actions of the Commission in the administration of Louisiana’s ad valorem tax scheme, as it pertained to plaintiffs’ public service pipelines, violated the equal protection and due process clauses of the Louisiana and United States Constitutions. Judge Kelley pre-termitted decision on the constitutionality of La. R.S. 47:1851(K) and (M) and remanded the matter to the Commission with instructions that the Commission require the parish assessors to assess the public service pipelines of the plaintiffs for each of the tax years at issue and calculate taxes based on fifteen percent (15%) of those assessments. Judge Kelley further ordered the Commission to issue plaintiffs a full refund, plus interest, of the differ *525 ence between the amounts paid for each year and the reassessed amount no later than September 20, 2005. Plaintiffs appealed this decision, which resulted in our decision in ANR VI.
In ANR VI, this court affirmed the declaratory judgment rendered in favor of plaintiffs, both as to the constitutional violations and as to the remedy involving the parish assessors and the reassessment of the plaintiffs’ public service pipelines for tax | ¡¡purposes. With regard to the refunds, if any, that might be issued following reassessment, this court noted as follows:
The judgment appealed from mandates that the Commission issue to all plaintiffs a full refund, plus interest, of the difference between the amounts paid for each year and the reassessed amount no later than September BO, 2005, within six months following the date of judgment. The Commission has answered the appeal and prayed that the judgment be modified to extend the deadline for completion of reassessment to six months following finality of judgment. Due to the delays occasioned by this appeal, we find that an extension of the deadline for issuance of refunds is warranted. Accordingly, we hereby amend the judgment to provide that the deadline for completion of reassessment is six months from the date the judgment becomes final.
ANR VI, 2005-1142 at 31, 923 So.2d at 99-100.
When the Louisiana Supreme Court denied plaintiffs’ writ application in ANR VI, and the United States Supreme Court refused to intervene, our decision therein became final, prompting a series of orders by the Commission relating to the reassessment of plaintiffs’ properties by the various parish assessors. The Commission issued Order No. 03-22-06 on March 22,
2006, cancelling the determinations of assessed values issued by the Commission and ordering the parish assessors to reassess plaintiffs’ property “utilizing the same valuation methodology used by their offices in assessing non-public service properties during the tax years in question and thereafter determine the assessed value of the [plaintiffs’] property ... at a rate of fifteen percent (15%) of fair market value.” Pursuant to the Commission’s orders, the parish assessors began the reassessments. Although there is some dispute as to how many were accomplished within the six month deadline provided for in ANR VI, it is clear that many were completed. According to the record, while reassessment resulted in a decrease in taxes in some parishes, it resulted in an increase in taxes in other parishes.
In response to the reassessments, plaintiffs lodged 359 protests with the various parish Boards of Review challenging the correctness of the reassessments. After receiving a number of adverse determinations from the parish Boards of Review, plaintiffs appealed the assessments to the Commission. Shortly after lodging those appeals with the Commission, plaintiffs filed a motion to enforce judgment with the 19th Judicial District Court alleging that by failing to timely complete the reassessment Rand refund process, the Commission had lost jurisdiction to conduct any further proceedings in this matter. The parish assessors subsequently filed a petition of intervention in support of the Commission and an opposition to plaintiffs’ motion to enforce judgment. In response thereto, plaintiffs objected to the petition of intervention on the grounds that it did not state a cause of action. In the alternative, plaintiffs moved that the intervention be dismissed as untimely.
These matters, along with the motion to enforce judgment, were brought for hear *526 ing before Judge Kelley on June 13, 2007. Judge Kelley rendered judgment on August 6, 2007, attempting to follow this court’s intent as set forth in our ruling in ANR VI. Judge Kelley dismissed the petition of intervention filed by the parish assessors. With regard to the motion to enforce judgment, it was denied in part and granted in part. Judge Kelley held that plaintiffs were entitled to an immediate refund of all property taxes paid under protest for the tax years at issue before the Commission could proceed to hear plaintiffs’ appeals from the reassessments of their public service pipelines. Judge Kelley further ordered that any assessors who had not completed the reassessment process within the original six month deadline were barred from participating in any further proceedings and ordered that any refunds that were paid pursuant to its judgment would be full and final.
This judgment was appealed by both plaintiffs and the assessors and resulted in our decision in ANR VII, wherein we clarified that the process, as originally envisioned by Judge Kelley and affirmed by this court in ANR VI, was as follows: (1) complete the reassessments of plaintiffs’ public service pipelines; (2) calculate the taxes on those properties based on fifteen percent (15%) of those assessments; and (3) refund the difference, if any, between the amounts paid for the tax years at issue and the reassessed amounts. ANR VII, 2008-1148 at 18, 997 So.2d at 104. Thus, in ANR VII, we reversed Judge Kelley’s August 6, 2007 judgment and remanded with instructions that Judge Kelley (1) remand the matter to the Commission for completion of the reassessment and refund process and (2) establish any deadlines necessary for the completion of the process. ANR VII, 2008-1148 at 19, 997 So.2d at 104-105.
| yPlaintiffs subsequently made at least one more attempt to halt the reassessment process and to obtain a full refund of the amounts paid under protest. In June 2007, plaintiffs persuaded Judge Kelley to enjoin the Commission from holding revaluation hearings on plaintiffs’ pipelines because the Commission had exceeded the limited time period allowed to complete the refund process. Judge Kelley also ordered that plaintiffs receive a complete refund of the taxes paid under protest before any proceedings could continue before the Commission. This court vacated that order and instructed that the revaluation proceedings go forward. ANR VIII, 2007-2282 at 8-9, 997 So.2d at 110-111.
The appeals from the proceedings before the local parish authorities were heard by the Commission in October 2009. On November 23, 2009, the Commission issued its ruling. The Commission noted that the parish assessors had complied with Order No. 03-22-06 by issuing the relevant tax forms (LAT 4, 5, and 14) to plaintiffs, who subsequently filed their returns with the assessors. In their returns, plaintiffs reported the depreciated replacement cost of their pipelines, and in an addendum to those returns, sought a reduction in value for obsolescence based upon varying service factor calculations.
The Commission found that the assessors had carried their burden of proof that they “employ the same valuation and assessment methodology as that used to assess the preferred properties,” which was the directive of ANR VI. See ANR VI, 2005-1142 at 27, 923 So.2d at 97. As to the issue of obsolescence, the Commission ruled that plaintiffs had the burden of proof. The Commission determined that plaintiffs carried their burden and proved that they were entitled to a reduction in their values for a certain level of obsoles *527 cence. The Commission concluded as follows:
Nevertheless, on the limited facts of this case, recognizing that 1) these are rate-regulated taxpayers, 2) whose pipelines traverse this state and numerous other states, and 3) where approximately 3/8 of the parishes involved apparently did allow a reduction in value due to obsolescence, applying the service factor for throughput provided in the guidelines, the Commission finds that the failure to adjust these taxpayers’ values for obsolescence in accordance with the service factor for throughput provided in the guidelines, reached incorrect values for .the taxpayers’ properties, and constituted an abuse of discretion on the part |sof Assessors who failed to allow these taxpayers a deduction for obsolescence over and above physical deterioration ....
The record indicates that affidavits by Sally Costley dated August 28, 2006 provided to all of the Assessors indicated throughput figures for each of the taxpayers for each of the years involved.
This affidavit corrected such figures that had been provided in addenda to the LAT forms filed by the taxpayers earlier that year. Although there was some evidence that these corrected figures may have been received by Assessors after they had completed the reassessment process, it would seem to have been simple enough for Assessors to have revised their reassessments in accordance with these corrected figures at around that time.
The Commission adopts those throughput figures as the prevailing evidence as to obsolescence, and, applying same to the guidelines contained in Chapter 13 of the Commission’s Rules and Regulations, hereby finds that the assessed values certified to the Commission by the Boards of Review are to be reduced by the applicable service factor indicated by those guidelines.[3]
Immediately following the Commission’s November 23, 2009 ruling, plaintiffs filed a petition for judicial review in the 19th Judicial District Court.[4] Shortly thereafter, *528 plaintiffs amended their pleadings to submit a spreadsheet “setting forth ... the correct assessed valuation of [their] public service property for purposes of ad valo-rem taxation, which is calculated at 15% of [the Commission’s] determination of Louisiana ^taxable values.” Plaintiffs also later amended their pleadings to name over thirty parish assessors as defendants to these proceedings.[5]
Before being named as defendants in these proceedings, twenty-five (25) parish assessors filed cross-claims and reconven-tional demands (cross-appeals) seeking judicial review of the Commission’s ruling that they had abused their discretion on reassessment, praying that the decision of the Commission be reversed and vacated, and that their original determinations of fair market and assessed value of plaintiffs’ property, as affirmed by the various parish Boards of Review, be reinstated.[6] In all of their pleadings, the assessors specifically alleged that they were seeking judicial review pursuant to the provisions of La. R.S. 47:1998.[7]
In response to the assessors’ cross-appeals, plaintiffs raised numerous exceptions, including an exception raising the objection of no right of action. Plaintiffs argued that at no point in ANR VI did this court authorize the assessors to appeal the Commission’s ruling with respect to the calculation of plaintiffs’ taxes or the amount of any refunds owed. Rather, plaintiffs maintained, pursuant to La. R.S. 47:1903.3, the | Tnassessors had the right to *529 intervene in the appeal taken by plaintiffs. Plaintiffs concluded: “Thus, while the Assessors are not without access to review of the Commission’s decision, they cannot initiate such review on their own or convert this matter into an appeal under La. R.S. 47:1998.”
The exception was argued before Judge Kelley on November 15, 2010, at which time Judge Kelley granted same, dismissing the cross-claims and reconventional demands (cross-appeals) filed by the assessors. The motion for stay pending appeal filed by the assessors was denied.[8] A judgment in accordance with Judge Kelley’s findings was signed on November 29, 2010. It is from this judgment that the assessors have appealed, assigning the following specifications of error:
1. The court below erred to the extent that it held that judicial review of a ruling of [the Commission] rendered pursuant to [La. R.S.] 47:1989 is governed by the procedural provisions of [La. R.S.] 47:1856 rather than 47:1998.
2. The court below erred in maintaining plaintiffs’ exception of no right of action and dismissing the cross-claims and reconventional demands (cross-appeals) filed by defendant Assessors.[9]
DISCUSSION
Generally an action can only be brought by a person having a real and actual interest that he asserts. La.Code Civ. P. art. 681. The objection of no right of action tests whether the plaintiff, who seeks relief, is a person in whose favor the law extends a remedy. See Howard v. Administrators of Tulane Educational Fund, 2007-2224, p. 16 (La.7/1/08), 986 So.2d 47, 59. A peremptory exception pleading the objection of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. Louisiana State Bar Ass’n v. Carr and Associates, Inc., 2008-2114, p. 8 (La.App. 1 Cir. 5/8/09), 15 So.3d 158, 165; La.Code Civ. P. art. 927 A(6). The objection of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Red Stick Studio Development, L.L.C. v. State ex rel. Dept. of Economic Development, 2009-1349, p. 5 (La.App. 1 Cir. 4/8/10), 37 So.3d 1029, 1033, unit denied, 2010-1501 (La.10/1/10), 45 So.3d 1102. Whether a plaintiff has a right of action is a question of law. Therefore, it is reviewed de novo on appeal. To prevail, the defendant must show that the plaintiff does not possess an interest in the subject matter of the suit. Estate of Mayeaux v. Glover, 2008-2031, p. 5 (La.App. 1 Cir. 1/12/10), 31 So.3d 1090, 1093, writ denied, 2010-0312 (La.4/16/10), 31 So.3d 1069.
*530 An examination of the pleadings at issue reveals that the assessors sought to challenge the Commission’s ruling as arbitrary and capricious, not supportable or sustainable by the record, and in excess of the Commission’s authority. They requested that the ruling be reversed, that the assessors’ original determinations of fair market value of plaintiffs’ property be reinstated, and that plaintiffs’ claim for refunds be dismissed. According to the assessors’ pleadings, they asserted “their right to obtain judicial review of the ... Commission’s ruling under [La. R.S.] 47:1998.” On appeal, the assessors argue that “the classification of the property subject to review has no bearing whatsoever on the question of whether judicial review is governed by [La. R.S.] 47:1856 or [La. R.S.] 47:1998.” We disagree.
In response to the assessors’ appeal, plaintiffs argue that assessors’ reliance on La. R.S. 47:1998 is misplaced because the assessments in this case were not local assessments but rather “reassessments of public service property solely for the purposes of determining refunds due” to plaintiffs. Plaintiffs further assert that the “actions pending in the lower court are the remedy phase of an original constitutional challenge brought under La. R.S. 47:1856,” and the mere fact that the assessors “were involved in determining the amount of refunds does not change the character, nature or |12quality of the action.” As support for their argument, plaintiffs cite Judge Kelley’s oral reasons for judgment following the November 15, 2010 hearing on the no right of action exception:
The original judgment in this matter and the intent of the judgment was that because you had been treated differentially from other interstate gas line transmission companies, that you were to be treated the same as those that had been locally assessed rather than Commission assessed. It does not change the nature of what you are.... and to the extent that the ... Commission delegated the assessment to anybody else on the planet is of no moment. You still are an interstate pipeline that falls within those statutes. The order — or the judgment was that they were to utilize the methodology only of the intrastate transmission companies. There’s no suggestion that they lost jurisdiction over you as an interstate company. So I’m going to grant the — your position is correct. I’m going to grant the no right of action.
Plaintiffs also cite to Judge Kelley’s comments during a March 15, 2010 hearing[10] at which time Judge Kelley recognized *531 that the assessors were relying on the wrong procedural statute to institute appeals of the Commission’s November 28, 2009 ruling. Judge Kelley noted as follows:
I thought everybody was clear that the remedy ordered in the underlying litigation was an attack on the methodology utilized. It was not — there is no judgment that changes their status—
[T]he procedural review process must go through as a public service utility would be handled, which means it would go under, what, 1856 instead of the — even though they’re using the methodology for valuation pursuant to the judgment required, because of the disparity in treatment on the front end, even though the methodology used is the methodology under 1998, the substantive procedural review process has to be maintained and stay under 1856.
113They are interstate. They are entitled to a substantive review under 1856, not — they are not in an intrastate, even though the methodology is required to be used.
The full intent of the first trial, the judgment of it and it was recognized in my mind by the first circuit, and the supreme court, and the U.S. Supreme Court is that they were treated disparately. They are entitled to be treated the same as those—
Of intrastates for purposes of the methodology utilized to value. That does not take them out of their review and appeals process otherwise available to every interstate provider. So it seems to me, you got to come back through here.
Recently in Gisclair v. Louisiana Tax Com’n, 2009-0007, p. 2 n. 2 (La.6/26/09), 16 So.3d 1182, 1134 n. 2 (Gisdair I), the Louisiana Supreme Court addressed the differences between assessments of local property by assessors and assessments of public service property by the Commission:
Under Louisiana Const, art. VII, § 18(D), each local assessor determines the fair market value of all property located in his parish or district, except for public service property, which is valued by the [Commission]. The process of valuation and assessment for most property is often referred to as a “local assessment” because it is done by the local assessors in each parish and is governed by the provisions set forth in [La. R.S.] 47:1951 et seq. The procedure for assessments of utilities and other public services properties is often referred to as a‘'“central assessment” because valuation and assessment is done centrally by the [Commission] in Baton Rouge. This procedure is governed by the provisions set forth in [La. R.S.] 47:1851 et seq. [Citations omitted.]
The court in Gisdair I acknowledged that public service properties are not subject to the same constitutional and statutory procedures applicable to locally assessed property:
[B]ecause public service properties are centrally assessed by the [Commission], not local assessors, in accordance with La. Const, art. VII, § 18(D) and [La. R.S.] 47:1854, the [Commission] issues both the initial determination of assessed valuation and reviews that initial determination. Therefore, in this case, the [Commission] has original jurisdiction over correctness challenges, while the district court has original jurisdiction over legality challenges.
*532 Gisclair I, 2009-0007 at 5-6, 16 So.3d at 1136 (citations and footnote omitted).
Subsequently, in Gisclair v. Louisiana Tax Com’n, 2010-0563 (La.9/24/10), 44 So.3d 272 (Gisclair II), the Louisiana Supreme Court considered whether an 114assessor had a right of action under La. R.S. 47:1998(C) to bring a constitutional challenge to a public service property assessment. In Gisclair II, the assessor asserted in his petition that his suit was brought pursuant to the “authority of La. R.S. 47:1998(C) and such other provisions of law as may govern this action.” Gisclair II, 2010-0563 at 8, 44 So.3d at 278. The court noted as follows with regard to La. R.S. 47:1998(C):
Though entitled “Judicial review, generally,” this statutory provision read in context clearly governs suits contesting local assessments made by local assessors and is contained in the general assessment provisions of our ad valorem property tax statutes, not in the special provisions governing the assessment of public service properties set forth in [La. R.S.] 47:1851-1858.
Gisclair II, 2010-0563 at 8, 44 So.3d at 279 (footnote omitted). The court concluded that La. R.S. 47:1998(C) authorized suits only with respect to assessments by local assessors and did not apply to assessments of public service property by the Commission. The court further held that “under the clear and explicit language” of La. R.S. 47:1856, which addresses the assessment of public service properties, “the right to bring an ‘as applied’ challenge regarding tax valuation of public service property” belongs “solely to the public service taxpayer, and not to the assessor.”[11] Id., 2010-0563 at 10, 44 So.3d at 280.
115Applying the rationale of Gisclair II to the present case, the assessors have no right of action under La. R.S. 47:1998 to appeal decisions of the Commission relating to assessments of public service property. As discussed previously, the assessors’ only authority to reassess plaintiffs’ public service property in this case was granted by Judge Kelley and this court in the context of the remedy phase of on-going litigation in the 19th Judicial District Court. The reassessment and refund process was only to be utilized for purposes of correcting the assessments issued by the Commission, the assessor of public service property. As plaintiffs argued on *533 appeal, the fact that the assessors were involved in this process cannot “change the character, nature or quality of the action. It remains a constitutional challenge involving public service property.” Likewise, during the March 15, 2010 hearing, Judge Kelley noted, “even though the methodology used is the methodology under 1998, the substantive procedural review process has to be maintained and stay under 1856.” Thus, we conclude that because the reassessment and refund process was part of the court-ordered remedy phase of the on-going litigation in the 19th Judicial District Court, any review of same can only be conducted within the on-going litigation, which was instituted pursuant to La. R.S. 47:1856.
Accordingly, insofar as Judge Kelley sustained plaintiffs’ no right of action exception, preventing the assessors from proceeding forward with their cross appeals based on La. R.S. 47:1998, we find no error in the November 29, 2010 judgment. The assessors had no right of action to appeal the Commission’s ruling relating to public service property under La. R.S. 47:1998. See Gisclair II, 2010-0568 at 8-10, 44 So.3d at 278-281. However, as clarified by the supreme court in Giselair 11, and acknowledged by plaintiffs on appeal, the assessors do have the right to intervene in plaintiffs’ petition for judicial review pursuant to La. R.S. 47:1903.8, which provides as follows: “Notwithstanding any other law to the contrary, in any cause of action brought under the provisions of [La.] R.S. 47:1856, 1857, 1998, or 2110, the assessor of the parish or district where the property is located may intervene in such suit and become a party thereto.” Gisclair II, 2010-0563 at 10 n. 12, 44 So.3d at 280 n. 12.
| ^Interventions are provided for in La.Code Civ. P. art. 1091, as follows:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiffs demand; or
(3) Opposing both plaintiff and defendant.
It is well settled that an intervenor takes the proceedings as he finds them. Strain v. Trinchard, 2005-1433, p. 9 (La.App. 1 Cir. 6/9/06), 938 So.2d 1008, 1013. The intervenor cannot change the issue between the parties, and can raise no new one. He must take the suit as he finds it without raising issues between the defendant and the plaintiff that they have not themselves raised. Mike M. Marcello, Inc. v. Louisiana Gaming Control Bd., 2004-0488, p. 5 (La.App. 1 Cir. 5/6/05), 903 So.2d 545, 548. The intervener’s rights are confined to joining or resisting either the plaintiff or the defendant, or to opposing both. La.Code Civ. P. art. 1091.
In the proceedings below, notwithstanding the fact that they had not been named as parties, twenty-five (25) of the parish assessors filed cross-claims and re-conventional demands (cross-appeals) seeking judicial review of the Commission’s November 23, 2009 ruling. It is well-settled in Louisiana law that “[e]very pleading shall be so construed as to do substantial justice.” La.Code Civ. P. art. 865. Furthermore, the jurisprudence holds that courts may overlook miscaption-ing of a pleading where the other party is not prejudiced. Higdon v. Higdon, 385 So.2d 396, 398 (La.App. 1 Cir.1980). Our courts look beyond the caption, style, and form of pleadings to determine from the *534 substance of the pleadings the nature of the proceeding; thus, a pleading is construed for what it really is, not for what it is erroneously called. Rochon v. Young, 2008-1349, p. 3 (La.App. 1 Cir. 2/13/09), 6 So.3d 890, 892, writ denied, 2009-0745 (La.1/29/10), 25 So.3d 824, cert. denied, — U.S. —, 130 S.Ct. 3325, 176 L.Ed.2d 1216 (2010).
|17In our view, the assessors’ cross-appeals are really interventions brought pursuant to La. R.S. 47:1903.3. There is clearly no prejudice to plaintiffs by the improper labeling of the assessors’ pleadings. This result serves the interest of justice and judicial economy. See Texas Gas Transmission Corp. v. Gagnard, 223 So.2d 233, 238 (La.App. 3 Cir.1969) (the incorrect designation of an incidental action as a reconventional demand does not prevent the court from considering it as an intervention). Thus, to the extent that Judge Kelley dismissed the assessors’ demands, i.e., interventions to which they are clearly entitled under La. R.S. 47:1903.3, we reverse the November 29, 2010 judgment and remand for further proceedings consistent with this opinion.
CONCLUSION
For the above and foregoing reasons, we affirm Judge Kelley’s November 29, 2010 judgment insofar as it sustained plaintiffs’ no right of action exception as to the La. R.S. 47:1998 issue. The assessors have no right of action under La. R.S. 47:1998 to appeal the assessments of plaintiffs’ public service property. However, to the extent that Judge Kelley dismissed the assessors’ claims, which we find were actually interventions to which they were entitled pursuant to La. R.S. 47:1903.3, we reverse and remand for further proceedings consistent with this opinion. All costs associated with this appeal are assessed equally between plaintiffs and the assessors.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. MOTION FOR LEAVE TO SUBMIT ADDITIONAL DOCUMENTS WITH BRIEF DENIED.

. The relevant portions of La. R.S. 47:1851 provide as follows:
K. "Pipeline company” means any company that is engaged primarily in the business of transporting oil, natural gas, petroleum products, or other products within, through, into, or from this state, and which is regulated by (1) the Louisiana Public Service Commission, (2) the Interstate Commerce Commission, or (3) the Federal Power Commission, as a "natural gas company” under the Federal Natural Gas Act, 15 U.S.C. §§ 717-717w, because that person is engaged in the transportation of natural gas in interstate commerce, as defined in the Natural Gas Act.
M. "Public service properties” means the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airline, electric membership corporation, electric power company, express company, gas company, pipeline company, railroad company, telegraph company, telephone company, and water company. For each barge line, towing, and *524 other water transportation company or private car company, only the major movable property owned or used but not locally assessed or otherwise assessed in this state in interstate or interparish operations shall be considered as public service property.

. On January 26, 2010, the Commission issued a "Supplement To Findings Of Fact And Conclusions Issued The 23rd Day Of November 2009.” Through this Supplement, the Commission found as follows: "[T]he obsolescence factors computed by utilizing the taxpayers’ throughput/capacity figures available under table 1305 of the Rules and Regulations shall be applied to the total property of the taxpayers to determine the amounts of refunds due, if any.”

. In addition to the appeal filed by plaintiffs in the 19th Judicial District Court, some assessors sought judicial review in their home districts, resulting in a virtual cobweb of litigation wherein the remedy ordered by Judge Kelley in the on-going litigation in the 19th Judicial District Court and affirmed by this court in ANR VI is under review in multiple jurisdictions. For example, there are two other appeals currently pending before this court that stem from the Commission’s November 23, 2009 ruling. See Michael Martin, Assessor Lafourche Parish v. ANR Pipeline Co., 2011-0751 (La.App. 1 Cir.8/23/11), 76 So.3d 534 (an appeal by ANR, Tennessee Gas Pipeline, and Southern Natural Gas Company from a ruling of the 17th Judicial District Court that reversed and vacated the Commission’s November 23, 2009 ruling and reinstated assessment values as determined by the Lafourche Parish Assessor for purposes of determining whether any refund was owed to the pipelines); and Gene Bonvillain, Assessor of Terrebonne Parish v. Tennesse Gas Pipeline Co., 2011-0963 (La.App. 1 Cir. 10/06/11), - So.3d-(an appeal by Tennessee Gas Pipeline from a ruling of the 32nd Judicial District Court that reversed and vacated the Commission’s November 23, 2009 ruling and reinstated assessment values as determined by the Terrebonne Parish Assessor for purposes of determining whether any refund was owed to the pipeline). We note that both Michael Martin (Lafourche Parish) and Gene Bonvil-lain (Terrebonne Parish) were named as de *528 fendants by plaintiffs in their petition for judicial review filed in the 19th Judicial District Court. However, only Martin was among the assessors who filed cross claims and recon-ventional demands (cross appeals) and thus is also a party to the instant appeal.

. Although plaintiffs’ original petition and first supplemental and amending petition for judicial review named only the Commission as defendant, plaintiffs listed not only the Commission, but also the names of over thirty parish assessors and their attorney of record for service on both petitions. However, the plaintiffs directed the Clerk of Court's office to "Please Hold Service” of both petitions. We note that had service of either of these petitions been perfected on the parish assessors, this would have satisfied the notice requirements that plaintiffs were statutorily bound by pursuant to La. R.S. 47:1856 and 47:2134(B).

. According to the record, the following parish assessors are parties to this appeal: Russel L. Benoit (Acadia Parish), Richard Earl (Allen Parish), Bobby Cudd (Beauregard Parish), Mona Kelley (Cameron Parish), Monelle M. Moseley (Concordia Parish), Jimmy Stephens (DeSoto Parish), Geneva Odom (East Carroll Parish), Rickey J. Huval, Sr. (Iberia Parish), Eddie Gatlin (Jackson Parish), Michael Martin (Lafourche Parish), John A. "Aron” Johnson (LaSalle Parish), Pam Jones (Lincoln Parish), John Hill (Morehouse Parish), Rich Bailey (Ouachita Parish), Ralph R. Gill (Rapides Parish), Emmett Brown, III (Richland Parish), Lawrence Patin (St. Martin Parish), Jarrod K. Longman (St. Mary Parish), Mary Baker (Union Parish), Kathryn Broussard (Vermillion Parish), James A. Johnson (Vernon Parish), M. Randall Seal (Washington Parish), DeAnna K. Smith (West Carroll Parish), and Lawrence Desadier (Winn Parish). Rick Hargis (Natchitoches Parish) was among the parish assessors to originally file a cross-claim and reconventional demand against plaintiffs. However, Assessor Hargis hied a Motion for Voluntary Dismissal, which was signed by the trial court on January 27, 2010, dismissing his claims. Thus, he is not a party to this appeal.

.The relevant portions of La. R.S. 47:1998 provide as follows:
C. The assessor shall bring suit, when necessary to protect the interest of the state, and shall also have the right of appeal and such proceedings shall be without cost to him or the state; however, prior to the initiation of a lawsuit against a taxpayer who is suspected of concealing property from assessment, the assessor shall provide written notice to the governing body of the taxing authority the tax revenues of which are the subject of the lawsuit.

. The assessors sought supervisory writs with this court of the denial of their motion for stay pending appeal. In ANR Pipeline Co. v. Louisiana Tax Com’n, 2010-2184 (La.App. 1 Cir. 1/7/11) (unpublished writ action), this court granted the assessors' writ application, finding, in pertinent part, as follows: "The interests of judicial efficiency and fairness dictate that the matter on appeal be resolved prior to further proceedings in the district court.... [T]hat portion of the ... November 29, 2010 judgment denying relators’ motion for stay pending appeal is reversed, and judgment hereby is entered granting the motion to stay.”

. Prior to filing their brief, the assessors filed a motion for leave to attach certain documents to their brief. We have considered their motion and incorporated memorandum in support, as well as plaintiffs' opposition thereto. As argued by plaintiffs, the assessors seek to attach to their brief information that is either already in the record or unnecessary to the determination of the issues in this appeal. Accordingly, the motion is denied.

. Although referenced in plaintiffs’ brief, the transcript of the March 15, 2010 hearing was not made part of the instant record by the assessors in their "Designation of Record on Appeal.” However, the transcript is included in the writ application in Michael Martin, Assessor Lafourche Parish v. ANR Pipeline Co., 2010-0922 (La.App. 1 Cir. 8/20/10) (unpublished writ action). Pursuant to the provisions of Uniform Rules-Courts of Appeal, Rule 2-1.14 ("Any record lodged in this court may, with leave of court, be used, without necessity of duplication, in any other case on appeal or on writ.”) and Rule 4-8 ("The Rules of the court pertaining to appeals and not conflicting with Rules specifically pertaining to applications for writs, when applicable and insofar as practicable, shall govern writ applications and the dispositions thereof.”), we have reviewed the pertinent portions of the transcript that are necessary to adequately review the issues raised in the instant appeal. We note that among the matters considered by Judge Kelley at the March 15, 2010 hearing was a rule to show cause why the assessors, the Commission, and their attorneys should not be held in contempt of court and face sanctions for the filing of separate judicial reviews in other parishes on the revaluations done pursuant to the remand in the ongoing litigation out of the 19th Judicial District Court.

. Both La. R.S. 47:1998 and 47:1856 are found in Title 47, Revenue and Taxation, Subtitle III, Provisions Relating to Ad Valorem Taxes, of the Louisiana Revised Statutes. However, La. R.S. 47:1998 is contained in Chapter 3, Assessment, Part III, Assessment Procedure, whereas La. R.S. 47:1856 is contained in Chapter 2, State Supervision of Levy and Assessment, Part III, Assessment of Public Service Properties. Louisiana Revised Statutes 47:1856(G) provides, as follows:
Any taxpayer asserting that a law or laws, including the application thereof, related to the valuation or assessment of public service properties is in violation of any act of the Congress of the United States, the Constitution of the United States, or the constitution of the state shall file suit in accordance with the provisions of R.S. 47:2134(C) and (D). The provisions of R.S. 47:1856(E) and (F) shall be applicable to such proceedings; however, the tax commission and all affected assessors and the officers responsible for the collection of any taxes owed pursuant to such assessment shall be made parties to such suit. If such suit affects assessments of property located in more than one parish, such suit may be brought in either the district court for the parish in which the tax commission is domiciled or the district court of any one of the parishes in which the property is located and assessed. No bond or other security shall be necessary to perfect an appeal in such suit. Any appeal from a judgment of the district court shall be heard by preference within sixty days of the lodging of the record in the court of appeal. The appeal shall be taken thirty days from the date the judgment of the district court is rendered.